Carna L. PETERSON, by Larry Broadhead, guardian, Plaintiff and Appellant,

v.

David H. CARTER and Janet S. Carter, Defendants and Respondents,

State of Utah, by and through Utah State Department of Social Service, Intervenor.

No. 15310.

Supreme Court of Utah.

May 3, 1978.

---

4.  76–5–102 as required under 76–5–103(1).

5.  76–1–601(9).

6.  *State v. Logan,* Utah, 563 P.2d 811, 813 (1977); *State v. Romero,* Utah, 554 P.2d 216 (1976).

7.  76–5–103(1)(b).

Howard, Lewis & Petersen, John L. Valentine, Provo, for plaintiff and appellant.

Dave McMullin, Payson, Stephen G. Schwendiman, Asst. Atty. Gen., Salt Lake City, for defendants and respondents.

HALL, Justice:

Appeal from the lower court's refusal to vacate a deed based on the grantor's incompetence and on undue influence.

On September 2, 1975, Carna Peterson conveyed her home and underlying real property to David and Janet Carter. At the time of the conveyance Mrs. Peterson was 91 years old and living in a resthome, her own home being left vacant since 1973. After some preliminary negotiations, Milton Harmon, an attorney, was asked to assist in completing the transaction, along with a representative of the State Welfare Department which held a lien on the property. That lien entitled the State to receive any proceeds of sale up to the amount of the lien ($28,000). Whatever the amount of sale, the State apparently intended to place $1,000 of the proceeds in a trust to pay for Mrs. Peterson's funeral expenses. The State requested an appraisal from one acquainted with property values in the area (although not a licensed realtor) which figure was set at $3,200. This figure was accepted by the State and the lien on the property was released. The Carters paid the appraisal figure and Mrs. Peterson executed a warranty deed in their favor. On November 13, 1975, Larry Broadhead was appointed guardian of the person and estate of Mrs. Peterson. Shortly thereafter notice was given that the family intended to vacate the deed.

■ Because this case is in equity, this Court has the prerogative of reviewing the facts as well as the law.[1] However, we must take into account the advantaged position of the trial judge and will only reverse where the evidence clearly preponderates against his decision.[2] After considering the evidence here we are constrained to affirm the lower court who ruled as follows:

1. . . . [t]he Court finds that the grantor . . . knew and understood the nature of the transaction, the lien position of the State of Utah, and the consequential limitations [sic] on benefits to be derived by her from a sale of the property.

2. The evidence does not show that the [grantees] defrauded the grantor or the State of Utah, over-reached, exerted duress or undue influence, or otherwise committed any unlawful act in negotiating for and acquiring said property.

This appeal challenges both of these rulings, viz., the competence of the grantor and the undue influence exerted by the grantees. The apparent basis of both of these challenges is the price sought and obtained for the property, $3,200.

■ In these times of appreciated land values, this amount appears to be nominal. However, it is undisputed that the property was in a very deteriorated condition and that it was appraised at this amount by one knowledgeable as to land values in the area. Furthermore, the real party in interest under Rule 17(a), U.R.C.P. is the State Welfare Department because of its lien against the property in the amount of $28,000. For Mrs. Peterson, her guardian, or any of her heirs to benefit from this lawsuit, the value

1. Art. VIII, Sec. 9, Utah Constitution.

2. *Barker v. Dunham*, 9 Utah 2d 244, 342 P.2d 867 (1959).

of the property would have to exceed that lien amount. The State requested the appraisal and accepted it, which supports the presumption that Mrs. Peterson was competent at the time of the conveyance. Irrespective of Mrs. Peterson's competency now, or even before the conveyance, substantial evidence was introduced to show that *at the time of the conveyance* Mrs. Peterson knew and understood the nature of the transaction.[3] The test whether grantor has sufficient mental capacity to make a deed is: Were mental faculties so deficient or impaired that there was not sufficient power to comprehend the subject of the deed, its nature and its probable consequences, and to act with discretion in relation thereto, or with relation to ordinary affairs of life?[4] Mr. Harmon testified that after having talked with Mrs. Peterson, and after her various questions about the effect of the sale had been answered, "there was no question in my mind that she knew what she was doing and she wanted the home to go to Mr. and Mrs. Carter." After this meeting and before the actual conveyance, Mr. Harmon contacted one Anna Broadhead, Mrs. Peterson's closest living relative, to inform her of the plans to sell the property and to ask if there were any objections. Mrs. Broadhead said she thought it would be best to sell the property. Although other testimony might show Mrs. Peterson's incompetence, we are inclined to defer to the trial court's decision due to his proximity to the situation and his ability to observe the witnesses and their demeanor.

The second point on appeal is somewhat intertwined with the first, except that the burden of showing undue influence in the execution of the deed is even greater than that of showing incompetence. It must be established by clear and convincing evidence[5] that the grantee exercised a dominating influence over the grantor.[6]

The record supports the finding of the trial court that no such showing was made.

Affirmed.

ELLETT, C. J., and CROCKETT, MAUGHAN, and WILKINS, JJ., concur.

---

3. *Burgess v. Colby*, 93 Utah 103, 71 P.2d 185 (1937).

4. *Anderson v. Thomas*, 108 Utah 252, 159 P.2d 142 (1945).

5. *Bradbury v. Rasmussen*, 16 Utah 2d 378, 401 P.2d 710 (1965).

6. *Anderson v. Thomas, supra* note 4.