**Floyd E. HARMSTON, Plaintiff and Appellant,**

v.

**T.R. HARMSTON, Defendant and Respondent.**

No. 19297.

Supreme Court of Utah.

April 10, 1984.

---

James R. Black, Salt Lake City, for plaintiff and appellant.

Herbert William Gillespie, Roosevelt, for defendant and respondent.

### PER CURIAM.

From the dismissal of his complaint for rescission of two conveyances to his brother, the plaintiff appeals, claiming he had been induced to sign the deeds by false representations of the latter to the effect his stepson was attempting to steal his property. He contends that his mistaken belief in such misrepresentation caused him to make the transfers to prevent such eventuality and constitutes a basis for rescission in equity.

The trial court specifically found that the subject deed was "the result of plaintiff's free and voluntary acts" and concluded that although plaintiff "may have been mistaken as to the nature of his stepson's dealings with his property, the defendant did nothing to cause or induce any such mistake and did not attempt to influence the plaintiff because of any mistake." Plaintiff's claim of unilateral mistake belies the underlying theory of his complaint based on the allegation therein that "defendant and plaintiff were mutually mistaken" as to the stepson's handling of his affairs, and that defendant has been unjustly enriched by means of the mutual mistake. In any event, the trial court determined (as a factual matter) that any alleged mistake did not result from fraudulent inducement on the part of the grantee-brother.[1]

The somewhat brief statement of facts in plaintiff's brief on appeal are excerpts from the record, favorable only to his contention. The references to pages in the record to support his claim are few, and not responsive to the purpose and intent of Rule 75(p)(2)(2)(d), Utah R.Civ.P.[2] The record also makes it apparent that the plaintiff did not meet his obligation of proving his case by clear and convincing evidence as required in a case such as this.[3] Had he sustained such burden, we agree that his authorities would have been pertinent as accurate statements of principles involved.

The properly received material facts may be summarized as follows. During their lives the brothers had maintained a good relationship up to and shortly after the deeds were executed. The plaintiff was childless, but his wife had a son when he married her, named Howard Blumer, whom he treated as a son. He moved from Provo, Utah, after she died, to Roosevelt, where his defendant brother resided. In March, 1980, plaintiff employed Draney, an

---

1. It is acknowledged that a deed may be set aside in equity as argued by plaintiff, but that is only where the grantor has been induced by fraud or undue influence. *See generally,* Thompson on Real Property (1963), §§ 2970, 2971.

2. *State v. Tucker,* Utah, 657 P.2d 755 (1982).

3. *Peterson v. Carter,* Utah, 579 P.2d 329 (1978).

attorney, to probate his wife's estate and in September of that year plaintiff asked Draney to prepare documents to transfer the two parcels of oil property, with reservation of life estate, to his brother and closest relative. Draney, having heard of some difficulty in handling of assets between plaintiff, his stepson and the bank, told plaintiff to come back in a week if he was sure he wanted to make the transfer and bring the descriptions of the property, which he did, accompanied by his brother, the grantee to be. Draney again cautioned plaintiff as to the legal consequences, saying he would prepare the papers if plaintiff so desired. Draney then saw the plaintiff alone to make certain that he was sure he wanted to make the transfer. Finally, on the fourth occasion, plaintiff returned and signed the deeds, which Draney notarized, and which plaintiff personally recorded.

Draney testified that he did not allow execution of the deeds until he was satisfied that plaintiff (an octogenarian) knew the nature of the transfer, the object of his bounty, what he was transferring, and that it would be irrevocable. Also, he said that the plaintiff was not under pressure, and that he was competent. After the deeds were executed and recorded, the brother relationship was good until the plaintiff, shortly thereafter, went to live with people named Houston. About a week or so thereafter, plaintiff signed an affidavit, roughly drawn by Mrs. Houston and prepared by a new attorney in which he purportedly attempted to rescind the deeds. He recorded the affidavit and about six months later filed this suit. From the time he went to live with the Houstons, the latter denied defendant access to the plaintiff.

The affidavit asserted that his brother "tricked" him into signing the deeds and that in fact he intended that his stepson, and grand stepchildren should have the property; that his brother told him his stepson was stealing from him, which is the reason he signed the deeds.

Plaintiff's entire claim is based on the alleged "trickery" and "bad faith" and violation of a "confidential relation" by the defendant, and plaintiff's deposition mostly is devoted to invectives hurled at his brother whom he labelled a "crook," "liar" and the like. Strangely enough, he testified he had no confidence in his brother and paid no attention to him, but now claims there was a breach of the "confidential relationship."

The trial court found plaintiff was not incompetent when he signed the deeds. The court also found that Draney professionally represented him, without any connection with plaintiff's brother professionally or otherwise; that there was no evidence of confidential relationship, or fraud, undue influence, or domination practiced by defendant; that the property deeded was but a part of plaintiff's estate and did not disinherit his stepson (whom the plaintiff legally adopted after this suit was filed); that plaintiff's counsel was adequate and advised plaintiff fully before signing of the deeds; and that the plaintiff effected the transfer freely and of his own volition.

The record reveals no abuse of discretion by the trial court, but reveals an abundance of substantial evidence that under the rules impels us to affirm the judgment, which is the order of this Court.