2001 UT 100

**UTAH COAL AND LUMBER RESTAU-
RANT, INC., a Utah corporation,
Plaintiff and Appellant,**

v.

**OUTDOOR ENDEAVORS UNLIMITED,
dba White Pine Touring, Defendant
and Appellee.**

**No. 20000699.**

Supreme Court of Utah.

Nov. 20, 2001.

Rehearing Denied Feb. 12, 2002.

Janet A. Goldstein, Park City, for plaintiff.

Alan L. Sullivan, Todd M. Shaughnessy, Salt Lake City, for defendant.

HOWE, Chief Justice.

### INTRODUCTION

¶ 1 Defendant Outdoor Endeavors Unlimited dba White Pine Touring (White Pine) failed to timely exercise an option to renew a lease between itself and plaintiff Utah Coal and Lumber Restaurant, Inc. (Utah Coal). After the original term of the lease expired, Utah Coal brought this action against White Pine for unlawful detainer. White Pine counterclaimed, seeking, inter alia, a declaratory judgment that it was equitably excused from strict compliance with the renewal pro-

vision of the lease. The parties filed cross motions for summary judgment and the trial court ruled in favor of White Pine. Utah Coal now appeals, contending that the trial court erred in equitably excusing White Pine from strict compliance with the lease's renewal provision.

## BACKGROUND

¶ 2 Utah Coal, the owner of a historic commercial building in Park City, Utah, and White Pine, the operator of a sporting goods store, entered into a lease on May 16, 1993, whereby Utah Coal leased the property to White Pine for five years. In exchange, White Pine was bound to pay an annual rent of $33,000. The lease also gave White Pine options to renew the lease for three consecutive five-year terms. To exercise each option, White Pine was required to notify Utah Coal of its intent in writing, not more than 120 days nor less than 60 days before the expiration of the current lease term.

¶ 3 Because the building was in serious disrepair at the time the lease was signed, the lease further provided that White Pine accepted possession of the building "as is" and took sole responsibility for the substantial remodeling necessary to make the premises suitable for retail use. Accordingly, White Pine spent over $105,000 on permanent improvements to the building between May and October 1993. To recover this amount, White Pine intended to take advantage of all three extensions of the lease and occupy the building for the full twenty years. Utah Coal knew of White Pine's financial need to take all three extensions.

¶ 4 The "window" for giving notice of intent to renew under the lease ran from May 13, 1998, to July 11, 1998.[1] During this renewal period, the owners of White Pine, Charlie and Kathy Sturgis, found themselves in the middle of intense negotiations with Park City over the future of the business's cross-country skiing concession. They also were coping with the unexpected loss of a critical employee, with a restructuring of the business's management, and with various family issues. With their attention centered on these matters, White Pine failed to give written notice of its intent to renew the lease within the specified period. As Kathy Sturgis explained in her deposition, "I believe we made a mistake. I fully admitted we made a mistake. It wasn't for any reason other than I was busy. We were busy doing other things in our business, wearing other hats."

¶ 5 Consequently, on July 15, 1998, Utah Coal's attorney sent White Pine a letter stating the lease would expire by its terms on September 9, 1998. White Pine received the letter on July 22, 1998, consulted its attorney, and immediately provided Utah Coal with written notice of White Pine's intent to exercise the option. Ultimately, White Pine's notice was eleven days late.

¶ 6 Utah Coal then sought to renegotiate the lease at terms much more favorable to its interests. White Pine declined, and on September 17, 1998, Utah Coal filed this unlawful detainer action against White Pine seeking actual and treble damages, as well as costs and attorney fees. White Pine counterclaimed, seeking a declaratory judgment that it was equitably excused from strict compliance with the notice of renewal provision of the lease. Following discovery, Utah Coal moved for summary judgment; White Pine cross-moved for partial summary judgment, seeking an order excusing it from strict compliance with the lease's renewal provision.

¶ 7 After a hearing on the motions, the trial court entered an order granting partial summary judgment to White Pine. The court, relying on language from *Geisdorf v. Doughty*, 972 P.2d 67, 70 (Utah 1998), found that White Pine's failure to properly exercise the option was an "honest and justifiable mistake." Further, it found White Pine's delay in exercising the option was short, Utah Coal did not suffer harm or prejudice as a result of the delay, and White Pine would suffer substantial harm if not equitably excused. Thus, the trial court concluded that White Pine "met the requirements necessary to invoke the doctrine of equitable excuse."

---

1. The exact term of the lease was not set forth in the lease. Rather, it specified that the term was to begin on the date that Park City issued an occupancy permit for the building. Park City issued the permit on September 9, 1993.

¶ 8 Utah Coal now appeals. It contends the trial court erred as a matter of law in equitably excusing White Pine's failure to exercise its option in a timely manner. Specifically, it argues that mere negligence, like that of White Pine, does not merit application of the equitable excuse doctrine and seeks reversal of the summary judgment.

## STANDARD OF REVIEW

¶ 9 We review a trial court's summary judgment ruling for correctness and afford no deference to its legal conclusions. *First Sec. Bank v. Creech,* 858 P.2d 958, 963 (Utah 1993); *Aurora Credit Servs., Inc. v. Liberty W. Dev., Inc.,* 970 P.2d 1273, 1277 (Utah 1998).

## DISCUSSION

### I. EQUITABLE EXCUSE

¶ 10 The sole question on appeal is whether the trial court erred in equitably excusing White Pine's failure to timely exercise its lease renewal option. This determination requires us to first examine the circumstances when a failure to precisely comply with the terms of a lease option should be equitably excused.

¶ 11 We begin our analysis by noting that both Utah Coal and White Pine discuss at length the implications of our decision in Geisdorf. In Geisdorf, we stated the general rule that in order to exercise an option to renew a lease, a lessee must strictly comply with the terms of the lease's option renewal provisions. *Id.* We also recognized that "there are instances in which deviation from strict compliance may be equitably excused." *Id.* at 71. In such instances, a lessee's failure to precisely adhere to the provisions regarding renewal in a lease would not prevent the renewal of the option. *Id.* Because *Geisdorf* did not require us to do so, however, we did not clearly set forth when a court should equitably excuse an untimely exercise of an option. Consequently, *Geisdorf* does little to resolve the issue before us today. We look, therefore, for guidance to previously established principles of equitable relief.

¶ 12 Utah courts "have broad authority to grant equitable relief as needed." *Jeffs v. Stubbs,* 970 P.2d 1234, 1243 (Utah 1998). Courts should invoke this authority whenever "appropriate and necessary to enforce rights or to prevent oppression and injustice." *Williamson v. Wanlass,* 545 P.2d 1145, 1148 (Utah 1976). However, equitable relief should not be used to "assist one in extricating himself from circumstances which he has created." *Battistone v. Am. Land & Dev. Co.,* 607 P.2d 837, 839 (Utah 1980); *see also Pac. Metals Co. v. Tracy–Collins,* 21 Utah 2d 400, 404, 446 P.2d 303, 306 (1968) ("[O]ne who commits a wrong must take the consequences and cannot complain that someone else doesn't rescue him therefrom."). Further, "[a]s a predicate to equitable relief, a party must exercise reasonable efforts to discharge his own obligations." *Bradford v. Alvey & Sons,* 621 P.2d 1240, 1242 (Utah 1980) (holding that plaintiffs were not entitled to equitable relief against a homebuilder who failed to deliver possession of a new home to them because they failed to obtain timely financing as required by the earnest money agreement). Thus the argument that "equity should consider performed a condition [the party seeking equity] had the option of performing" is without merit. *Willard Pease Oil & Gas Co. v. Pioneer Oil & Gas Co.,* 899 P.2d 766, 772 (Utah 1995).

¶ 13 Accordingly, we traditionally have limited the application of equity to cases of fraud, misrepresentation, duress, undue influence, mistake, and waiver. *Geisdorf,* 972 P.2d at 71 (noting that equity will excuse substantial compliance in cases of waiver); *Harmston v. Harmston,* 680 P.2d 751, 752 n. 1 (Utah 1984) (acknowledging "that a deed may be set aside in equity ... only where the grantor has been induced by fraud or undue influence"); *Gillmor v. Gillmor,* 596 P.2d 645, 646–47 (Utah 1979) (stating in a dispute over a lease, "[u]nless some principle in equity, such as fraud, mistake, and the like, demands otherwise, the leases should stand as written"); *see Pagano v. Walker,* 539 P.2d 452, 454 (Utah 1975) (stating that a joint tenancy agreement is "subject to attack only on the same basis as any other written agreement or contract, by showing that because of fraud, duress, undue influence, mis-

take, incapacity or other infirmity that in equity and good conscience it should not be enforced").

¶ 14 There is no reason to depart from these principles today. Where a lessee's failure to exercise an option to renew a lease in a timely manner is due to fraud, misrepresentation, duress, undue influence, mistake, or the lessor's waiver of its right to receive notice, it would be oppressive and unjust to require strict compliance with the lease, and thus equity should be invoked. Conversely, equity should not be applied in situations where the lessee's negligence, inadvertence, or neglect caused the failure to exercise a lease renewal option. When a lessee is negligent in exercising an option it cannot be said that the lessee has exercised "reasonable efforts to discharge his own obligations" because negligence indicates the absence of reasonable efforts. *Bradford*, 621 P.2d at 1242. Furthermore, the consequences of a lessee's failure to exercise an option, however uncomfortable they may be, are self-inflicted. Equitable relief should not be used to extricate the lessee from the consequences brought about by the lessee's own actions. *See Battistone*, 607 P.2d at 839.

¶ 15 In determining that White Pine merited equitable excuse, the trial court overlooked the principles discussed above and, instead, erroneously relied on criteria first applied in *F.B. Fountain Co. v. Stein*, 118 A. 47, 97 Conn. 619 (1922). *F.B. Fountain* balanced (1) the length of the delay in exercising the option, (2) the loss to the lessor as a result of the delay, and (3) the hardship to the lessee. *Id.* at 49. Where the delay in exercising was slight, the loss to the lessor small, and when not granting relief would cause hardship to the tenant, *F.B. Fountain* held that a lessee should be excused from strict compliance. *Id.* White Pines urges us to uphold the trial court and adopt *F.B. Fountain*, arguing that it is the law "in the vast majority of jurisdictions to have considered the question throughout the nation."

¶ 16 However, were we to adopt *F.B. Fountain*, a negligent lessee could be excused from its failure to comply with a lease's renewal provisions. Such a result is inconsistent with our prior case law as discussed above. Further, a broad exception that grants relief from a failure to comply with the lease anytime the delay is slight, the lessor's loss is small, and the lessee would suffer a hardship comes close to swallowing the general rule of strict compliance. Such an exception would apply equitable excuse in almost all cases.

¶ 17 White Pine also misapprehends the extent to which other jurisdictions rely on *F.B. Fountain.* While a majority of jurisdictions recognize situations where the untimely exercise of an option should be equitably excused, state high courts appear to be closely divided in their recognition of *F.B. Fountain.* Only a few high courts have explicitly adopted the *F.B. Fountain* test. *See, e.g., Aickin v. Ocean View Inv. Co.*, 84 Hawai'i 447, 455, 935 P.2d 992, 1000 (1997); *Trollen v. Wabasha*, 287 N.W.2d 645, 647 (Minn. 1979); *W. Tire v. Skrede*, 307 N.W.2d 558, 562 (N.D.1981); *Fletcher v. Frisbee*, 119 N.H. 555, 558, 404 A.2d 1106, 1108 (1979). More state high courts that have decided the issue have not adopted *F.B. Fountain* and, instead, have limited the equitable excuse doctrine, as we do today, to cases of fraud, misrepresentation, undue influence, duress, mistake, and waiver. *See, e.g., Dugan v. Haige*, 54 So.2d 201, 202 (Fla.1951) ("Because failure to give notice was due to negligence of the lessee, unaccompanied by fraud, accident, surprise or mistake, equity could not intervene."); *Rounds v. Owensboro Ferry Co.*, 253 Ky. 301, 312–13, 69 S.W.2d 350 (1934) (denying relief where the court could perceive no accident, fraud, surprise, mistake or other special circumstances); *Koch v. H. & S. Dev. Co.*, 249 Miss. 590, 623, 163 So.2d 710, 724 (1964) (stating lessee entitled to relief when the failure to give notice results not from the lessee's own ignorance or negligence but from accident, fraud, surprise or mistake); *Am. Oil Co. v. Rasar*, 203 Tenn. 37, 48, 308 S.W.2d 486, 491 (1957) (stating where no allegations of fraud, trickery, accident or mistake, no equitable relief); *Sentara Enters., Inc. v. CCP Assocs.*, 243 Va. 39, 44, 413 S.E.2d 595, 597 (1992) (stating where no fraud, accident, mistake, surprise or landlord conduct, tenant cannot equitably be rescued from his own negligence); *see also Guy*

*Dean's Lake Shore Marina v. Ramey,* 246 Neb. 258, 264, 518 N.W.2d 129, 133 (Neb. 1994) (denying equitable relief for mere forgetfulness of tenant); William B. Johnson, Annotation, *Circumstances Excusing Lessee's Failure to Give Timely Notice of Exercise of Option to Renew or Extend Lease,* 27 A.L.R.4th 266, 273 (1984).

¶ 18 Therefore, in light of our analysis above, we hold that the failure to strictly comply with a lease's option renewal terms may be equitably excused only when the failure is caused by instances of fraud, misrepresentation, duress, undue influence, mistake, or the lessor's waiver of its right to receive notice.

## II. WHITE PINE'S FAILURE TO RENEW THE OPTION

¶ 19 White Pine has not shown that either fraud, misrepresentation, duress, undue influence, mistake, or waiver caused White Pine to make an untimely exercise of its option. Rather, it has admitted that its own negligence caused its exercise to arrive late. As Kathy Sturgis stated in her deposition, "It wasn't for any reason other than I was busy. We were busy doing other things in our business, wearing other hats." Consequently, White Pine is not entitled to equitable excuse.

¶ 20 The trial court found that the "failure to timely exercise the option was an honest and justifiable mistake." If such a failure was indeed a mistake, under our holding today, it should be equitably excused. However, the trial court failed to recognize that in equity a mistake cannot be based on a negligent act or omission. Indeed,

> [a] mistake within the meaning of equity is a non-negligent but erroneous mental condition, conception, or conviction induced by ignorance, misapprehension, or misunderstanding, resulting in some act or omission done or suffered by one or both parties, without its erroneous character being intended or known at the time.

27A Am.Jur.2d *Equity* § 7 (1996). We acknowledged this principle over seventy years ago in *Provo Reservoir Co. v. Tanner,* 68

Utah 21, 25–26, 249 P. 118, 119 (1926), when we wrote:

> [N]o one can predicate a mistake on his own negligent omission to perform a legal duty.... When one is charged with a duty, and forgets to do it, it may under certain circumstances constitute excusable negligence, but it cannot be held to be a mistake.... Negligently and inadvertently omitting to perform a duty is far different than to omit it through mistake or accident.

Thus, White Pine's failure to renew the lease on time was not due to a mistake. Moreover, even if White Pine's untimely renewal was caused by a mistake, the mistake would have to be of a type for which equitable relief could be granted. *See John Call Eng'g v. Manti City Corp.,* 743 P.2d 1205, 1209–10 (Utah 1987) (listing the elements of a unilateral mistake); *Jensen v. Manila Corp. of Church of Jesus Christ of Latter-Day Saints,* 565 P.2d 63, 64–65 (Utah 1977) (identifying three kinds of mistakes upon which reformation may be based; each kind concerns a party's *understanding* of the contract). There is no evidence to support such a conclusion here.

## CONCLUSION

¶ 21 We conclude that the trial court erred by equitably excusing White Pine's failure to timely exercise the lease option absent a showing that the failure was caused by fraud, misrepresentation, duress, undue influence, mistake, or the lessor's waiver of its right to receive notice. The summary judgment in favor of White Pine is reversed, and the case is remanded for further proceedings.

¶ 22 Associate Chief Justice RUSSON, Justice DURHAM, Justice DURRANT, and Justice WILKINS concur in Chief Justice HOWE'S opinion.