**SDG MACERICH PROPERTIES, L.P., Appellant,**

v.

**STANEK INCORPORATED a/k/a Stanek, Inc., Joseph E. Stanek, and Lawrence Stanek, Appellees.**

No. 01–0788.

Supreme Court of Iowa.

July 17, 2002.

David Wiggins of Wiggins & Anderson, P.C., West Des Moines, for appellant.

John C. Gray of Heidman, Redmond, Fredregill, Patterson, Plaza, Dykstra & Prahl, L.L.P., Sioux City, for appellees.

STREIT, Justice.

Equity aids the vigilant, not those who forget to perform a legal duty. Stanek, Inc. had a twenty-year lease agreement with SDG Macerich Properties, L.P., allowing Stanek to operate a Hardee's franchise on a property near a Sioux City shopping mall. The lease agreement required Stanek to exercise an option to renew the lease by a particular date. Stanek forgot to exercise its option to renew by that date. Stanek argues equitable relief should save it from the consequences of its forgetfulness. Macerich finds refuge in basic contract principles and strict adherence to contractual terms. The district court agreed with Stanek, dismissing Macerich's petition for declaratory judgment and its motion for summary judgment. The court granted Stanek's counterclaim for declaratory judgment and equitable relief. Because we find equity does not relieve a party who simply forgot to timely exercise an option to renew a lease agreement, we reverse and remand.

## I. Background and Facts

Macerich is a real estate investment trust that owns approximately fifty-four shopping centers and a number of strip malls—including Southern Hills Mall in Sioux City, Iowa. Its predecessor signed twenty-year leases with a Kentucky Fried Chicken franchisee, a Pizza Hut franchisee, and Stanek, Inc. Stanek leased the demised property to construct and operate a Hardee's franchise. The initial lease terms ran for twenty years. Each lessee had an option to renew at the end of the initial term for an additional four five-year periods. The agreements required the les-

sees give the landlord written notification, exercising the option to renew the lease, at least twelve months before the lease term expired. Stanek's lease of the Hardee's property required notice of exercising the option to be given by September 30, 1999.

Near the time the twenty-year leases were due to expire, Macerich was in the process of considering whether to expand its shopping center and was negotiating to add a department store to its mall. It needed to expand parking and decided on the portion of its land occupied by KFC, Pizza Hut, and Hardee's restaurants.

Termination of KFC's, Pizza Hut's, and Hardee's leases was looming. Hardee's, Kentucky Fried Chicken, and Pizza Hut did not exercise their options to renew. Kentucky Fried Chicken entered into a two-year certain lease. Pizza Hut's lease expired on December 31, 2000. Macerich, relying on Stanek's failure to renew the Hardee's lease, continued its negotiations with the department store.

In December 1999, a date after the option for renewal expired, Macerich sent Stanek a "Tenant Estoppel Certificate" for Stanek to sign "confirming the commencement and expiration dates of the term."[1] Included in this confirmation certificate "were four remaining option(s) to renew the term of the lease for five years each." On January 20, 2000, Stanek notified Macerich of its intention to exercise its option to renew. This was approximately eight and a half months before the lease was to expire but was three and a half months too late. Macerich refused to allow Stanek to renew the lease because there was no option to renew the lease then existing.

Macerich filed a petition in equity for declaratory judgment and Stanek filed a counter-claim for equitable relief. The district court denied Macerich's motion for summary judgment and dismissed its petition for declaratory judgment. The court also granted Stanek's counterclaim for declaratory judgment and equitable relief. Macerich appealed.

Macerich argues the district court erred in: (1) denying its motion for summary judgment and (2) granting equitable relief for the defendants' forgetfulness and dismissing Macerich's petition for declaratory judgment.

## II. Scope of Review

 Our review of an action for declaratory relief is determined by the manner in which the action was tried to the district court. *Walsh v. Nelson*, 622 N.W.2d 499, 502 (Iowa 2001). This case concerns whether or not it is appropriate to grant equitable relief. As such, our review is de novo. *Johnson v. Kaster*, 637 N.W.2d 174, 177 (Iowa 2001). We must examine the facts as well as the law and decide the issues anew. *Id.* In doing so, we give weight to the district court's findings of fact, but we are not bound by these findings. *Id.*

 As to the court's denial of Macerich's motion for summary judgment, our review is for correction of errors at law. *Channon v. United Parcel Serv., Inc.*, 629 N.W.2d 835, 857 (Iowa 2001) (citation omitted). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

---

**1.** Stanek argued before the district court that because this document seemingly allowed Stanek more time to exercise the option to renew, the certificate constituted a waiver of the time limits placed on the renewal option in the lease agreement. The district court ruled Macerich did not waive the term for the renewal option. Stanek does not argue waiver on appeal.

and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3) (2002).

### III. The Merits

This case presents an issue of first impression in Iowa. We must determine whether equitable relief is available when a party, as the result of forgetfulness, untimely exercises its right of a lease renewal option. Macerich points to our consistent adherence to principles of strict contractual time limitations recognizing "time is of the essence." · *J.C. White v. RCA Serv. Co.*, 234 N.W.2d 153, 154 (Iowa 1975). Macerich argues it is entitled to possession of the lease property when the lease expires because Stanek failed to timely exercise its renewal option. In so arguing, Macerich cites numerous other jurisdictions that have required strict compliance with notice provisions in option contracts and have not granted equitable relief.

The district court concluded it was proper to apply equitable principles to grant relief in the case before us. In granting relief, the district court applied the *Fountain* test announced by the Connecticut Supreme Court eighty years ago in *F.B. Fountain Co. v. Stein*, 97 Conn. 619, 118 A. 47, 50 (1922). The court concluded whether equity is available to relieve a party's forgetfulness is determined by: (1) whether the lessee's conduct was the result of an honest mistake or oversight and not intentional, willful, or grossly negligent conduct; (2) whether the lessor has changed positions or been damaged by the delay; (3) the extent of the delay; and (4) whether the delay would work an unconscionable hardship on the lessee.

Applying the above test, the district court concluded Stanek's delay was the result of an oversight or mistake. The court found the three and a half month delay was not unreasonably long, and dur-

ing this time period Macerich did not take any specific action regarding its plans for expansion. The court· found the delay in notice did not prejudice Macerich. Weighing the above factors, the court concluded failure to give equitable relief would result in undue hardship on Stanek.

We are called upon to determine whether the renewal option provision of a lease agreement must be strictly enforced when a party simply forgot to exercise its option. Before we turn to the main issue, we briefly address two issues raised by Stanek in its attempt to justify equitable relief under the circumstances before us.

### A. Option Contracts and Substantial Performance

 First, Stanek contends it is appropriate to extend the principles of equity into the arena of option provisions solely in land contracts. An option is merely an offer that cannot be revoked until a certain date. 3 *Corbin on Contracts* § 11.2, at 466 (1996). Similarly, once this time period passes, an option holder may no longer accept the offer. *Id.* § 11.8, at 534. During the life of an option, it is the holder who has the power of acceptance. *Id.* § 11.8, at 515. Stanek contends that somehow, through equitable principles, the offer must stay open beyond the agreed upon time only for land contracts. However, the optionee has no power of acceptance after this critical date. Without articulating the reason why, Stanek contends the offer should remain open for land contracts whereas in all other areas of contract law the offer would end. This contention is wholly without merit. The principles applicable to option provisions in land contracts are the same as those for all other contracts. There is no reason to treat the two differently.

 Stanek also appears to argue strict construction of the notice provision is

inappropriate because Stanek substantially performed its duties under the lease agreement. Substantial performance is that which, "despite deviations from the contract requirements, provides the important and essential benefits of the contract to the promisee." 17B C.J.S. *Contracts* § 589, at 279 (1999); *see, e.g., Johnson v. Dodgen*, 451 N.W.2d 168 (Iowa 1990). The doctrine is intended to protect the right of compensation of those who have performed in all material and substantive particulars, and it excuses contractual deviations or deficiencies which do not severely impair the purpose underlying a contractual provision. 17B C.J.S. § 589, at 278.

■ The defense of substantial performance is not a valid principle to ameliorate against our clear rules of contract construction. Here, Stanek did not fulfill the conditions agreed upon for the time for performance. The notice of intent to exercise the renewal option is a condition precedent to irrevocability and the formation of contractual obligations. *See* 3 *Corbin on Contracts* § 11.8, at 517 (1996). It is not sufficient that after realizing the time for performance had passed, Stanek acted as quickly as possible. It is not enough that it notified Macerich of its intent to exercise the option three and a half months too late. Substantial performance will not excuse the nonoccurrence of an express condition precedent to a contract. 17B C.J.S. *Contracts* § 589, at 278. Given that "close enough" cannot save Stanek from its failure to timely renew, we turn to our rules governing enforcement of option provisions.

## B. Enforcement of Contract

■ We begin our discussion with the general rule that we determine the validity of an option provision by ordinary rules of contract. 17 C.J.S. *Contracts* § 55, at 502 (1999). The contract will be strictly construed if its words are clear and unambiguous. *See Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1272 (7th Cir.1996); *Brecht v. Cedar Rapids Dev. Co.*, 257 Iowa 1117, 1123, 136 N.W.2d 287, 291 (1965) ("[N]otice is subject to construction as any other written contract. Where the language used is plain and unambiguous the intent of the parties is determined by what the contract says."). Any conditions precedent to the option provision must be fulfilled according to the agreement for the option to become a contract between the parties. 17 C.J.S. *Contracts* § 55, at 502.

■ The rules regarding renewal-option provisions in lease agreements are quite clear. A cardinal rule of contract construction is that "time is of the essence." *J.C. White*, 234 N.W.2d at 154. "Contract provisions which not only set the time of performance but also spell out the consequences of nonperformance usually have been construed to make time of the essence." *Kakalik v. Bernardo*, 184 Conn. 386, 397, 439 A.2d 1016, 1021 (1981) (Shea, J., concurring); *Ujdur v. Thompson*, 126 Idaho 6, 878 P.2d 180, 183 (Idaho Ct.App. 1994). We have consistently recognized "it is the general rule that the time prescribed in the agreement for the exercise of an option is of the essence and, if the option is not exercised within the time limit, all the rights of the optionee stand forfeited without notice." *Figge v. Clark*, 174 N.W.2d 432, 434–35 (Iowa 1970). Where the parties made time of the essence in setting a deadline for exercising an option, strict compliance is required. *Ujdur*, 878 P.2d at 183. The lease agreement before us provided,

> Term ... Lessee shall have the right and option to extend the Lease Term for four (4) additional consecutive periods of five (5) years on the same terms.... Lessee may exercise each of the options ... by giving the Lessor written notice thereof not less than twelve (12) months

prior to the termination of the initial Lease Term or extended term, whichever the case may be.

Nothing about this option to renew provision is remotely ambiguous. The parties specifically provided time for performance in the lease agreement. They expressly agreed to a cutoff date of September 30, 1999, and by so doing made time of the essence. *See, e.g., id.* at 183 (where parties expressly agreed to cutoff date by which payment was due, the parties manifested their intent to make time of the essence in their agreement). Stanek did not give Macerich written notification until more than three and a half months later on January 20, 2000. Because Stanek failed to give proper notification, its lease expired on September 30, 1999. Stanek, however, asks us to ignore the parties' written agreement and save it from its forgetfulness in equity.

## C. Equitable Considerations

 The district court found, and Stanek seems to argue, equity is appropriate because Stanek's failure to timely give notice was the result of an "honest mistake or oversight." As a general principle, a court of equity has the power to relieve a party from the consequences of a mistake. 27A Am.Jur.2d *Equity* § 7, 525 (1996). However, what happened here is not the result of a mistake.

A mistake within the meaning of equity is a non-negligent but erroneous mental condition, conception, or conviction induced by ignorance, misapprehension, or misunderstanding, resulting in some act or omission done or suffered by one or both parties, without its erroneous character being intended or known at the time.

*Utah Coal & Lumber Rest., Inc. v. Outdoor Endeavors Unlimited,* 40 P.3d 581, 585 (Utah 2001) (quoting 27A Am.Jur.2d *Equity* § 7, 525 (1996)). Stanek does not

argue it misunderstood the terms of the contract. It does not contend it was unaware of the notice provision. Rather, the facts before us show Stanek failed to exercise its option because of simple forgetfulness. Forgetfulness is not the equivalent of a mistake.

No one can predicate a mistake on his own negligent omission to perform a legal duty.... When one is charged with a duty, and forgets to do it, it may under certain circumstances constitute excusable negligence, but it cannot be held to be a mistake.... Negligently and inadvertently omitting to perform a duty is far different than to omit it through mistake or accident.

*Id.* (citation omitted). As Stanek has admitted, it forgot to exercise its option to renew because of a mere oversight. *See Host Intern., Inc. v. Summa Corp.,* 94 Nev. 572, 583 P.2d 1080, 1082 (1978) (Where party admitted timely exercise of notice was simply "overlooked" the court would not apply equity to protect the party from its own negligent failure to give notice.). Thus, its failure to renew the lease on time was not due to a mistake. "The consequences of a lessee's failure to exercise an option, however uncomfortable they may be, are self-inflicted." *Id.* We will not use equitable principles to save a party from the circumstances it created.

Stanek would have us weigh the equities of each particular case to achieve the most "just" result. However, the decision of which of two profit-seeking parties is more deserving to prevail is not within the province of the courts. Stanek has not offered and we have found no justiciable standards announced in other jurisdictions to assist this court in making such an arbitrary decision. No one factor to be considered in such an equitable analysis is sufficiently compelling to require us to aid Stanek or

any other party where the parties bargained freely to their contract.

 To hold otherwise would do nothing more than create instability in business transactions and disregard commercial realities. "If the terms of options involving property rights are not strictly construed, Pandora's Box[2] is opened for serious property title problems to develop." *Robinson v. Martel Enters., Inc.*, 337 So.2d 698, 704 (Miss.1976) (footnote added). Were we to accept Stanek's argument, "all contracts would be called into question as meaningless and uncertain, dependent upon the whims of a panacean court or a jury." *Reynolds–Penland Co. v. Hexter & Lobello*, 567 S.W.2d 237, 239 (Tex.Civ.App.1978). Attempting in vain to balance the equities, especially in a situation where as here the record is devoid of any so-called "equities," will weaken the sanctity and predictability of the written word.

The written words of the contract afford greater certainty of intention, and more accurate compliance with the performance of the terms of the contracts by the parties thereto than do the retrospective, impassive conclusions of a court of equity. A court of equity should not be the first, but the last resort. It is bound by a contract as the parties have made it and has no authority to substitute for it another and different agreement, and should afford relief only where obviously there is fraud, real hardship, oppression, mistake, unconscionable results, and the other grounds of righteousness, justice and morality.

*Koch v. H & S Dev. Co.*, 249 Miss. 590, 163 So.2d 710, 727 (1964). In sum, application of the *Fountain* rule would result in granting relief for failure to comply with an option provision anytime the "delay is slight, the lessor's loss is small, and the lessee would suffer a hardship". *Utah Coal & Lumber Rest., Inc.*, 40 P.3d at 584. Such a rule would excuse failure to comply with the lease in most cases. This result is directly contrary to our established precedent enforcing strict adherence to contractual time limitations.

Here, Stanek has no excuse other than sheer absentmindedness to explain why it missed the deadline to renew the lease. There is no evidence of additional elements such as excusable fault, fraud, mistake, estoppel, accident, or overreaching. *See, e.g., Schiltz v. Teledirect Int'l, Inc.*, 524 N.W.2d 671, 674 (Iowa Ct.App.1994); *Sy Jack Realty Co. v. Pergament Syosset Corp.*, 27 N.Y.2d 449, 318 N.Y.S.2d 720, 267 N.E.2d 462, 464 (1971). It is only in rare cases where one or more of these factors is at play that courts will abandon strict construction of a written agreement.

Though Stanek contends "a few jurisdictions do apply a harsh and ancient prohibition of equitable relief," it misapprehends the degree to which other jurisdictions recognize the holding of *Fountain.* A majority of jurisdictions recognize certain circumstances where the untimely exercise of an option should be equitably excused. However, the state high courts appear to be closely divided in their adoption of *Fountain.* Only a few state high courts have explicitly addressed this case and adopted its holding. *See, e.g., Aickin v. Ocean View Invs. Co.*, 84 Hawai'i 447, 935 P.2d 992, 1000 (1997); *Trollen v. Wabasha*, 287 N.W.2d 645, 648 (Minn.1979); *Western Tire v. Skrede*, 307 N.W.2d 558, 562 (N.D. 1981); *Fletcher v. Frisbee*, 119 N.H. 555,

**2.** A Pandora's box from Greek mythology is the jar, later referred to as a box, from which Pandora allowed all the world's evils to escape. The Cambridge Encyclopedia 831 (2nd ed.1994). It is the source of a great collection of ills that need not be faced unless an unwise action is taken. The American Heritage Dictionary 897 (2d ed.1985).

404 A.2d 1106, 1108 (1979); *see also Duffy v. Casady,* 29 Kan.App.2d 549, 28 P.3d 1040, 1042–43 (2001) (applies *Fountain* test to relieve equity only if notice is given during the term of the lease).

A majority of state high courts have not adopted *Fountain,* but instead allow equitable relief only in cases of fraud, misrepresentation, undue influence, mistake, waiver, and duress. *See, e.g., Dugan v. Haige,* 54 So.2d 201, 202 (Fla.1951); *Rounds v. Owensboro Ferry Co.,* 253 Ky. 301, 69 S.W.2d 350, 354 (1934); *Koch,* 163 So.2d at 724; *Guy Dean's Lake Shore Marina Inc. v. Ramey,* 246 Neb. 258, 518 N.W.2d 129, 133 (1994); *Am. Oil Co. v. Rasar,* 203 Tenn. 37, 308 S.W.2d 486, 491 (1957); *Utah Coal & Lumber Rest., Inc.,* 40 P.3d at 585; *Sentara Enters., Inc. v. CCP Assocs.,* 243 Va. 39, 413 S.E.2d 595, 597 (1992). Other jurisdictions have required strict compliance with notice provisions in option contracts and have not granted equitable relief. *See, e.g., Bekins Moving & Storage Co. v. Prudential Ins. Co.,* 176 Cal.App.3d 245, 252–53, 221 Cal. Rptr. 738 (1985); *Ramey,* 518 N.W.2d at 131–33; *Host Int'l, Inc.,* 583 P.2d at 1080; *In re Millyard Rest., Inc.,* 110 B.R. 103, 105 (Bkrtcy.D.N.H.1990); *Ahmed v. Scott,* 65 Ohio App.2d 271, 418 N.E.2d 406, 410–11 (1979); *Western Sav. Fund Soc. of Philadelphia v. Southeastern Pennsylvania Transp. Auth.,* 285 Pa.Super. 187, 427 A.2d 175, 179–81 (1981); *Norton v. McCaskill,* 12 S.W.3d 789, 795 (Tenn.2000); *Crown Constr. Co. v. Huddleston,* 961 S.W.2d 552, 558–59 (Tex.Ct.App.1997).

These courts preserve not only sanctity of contract but also protect the integrity of the fundamental grounds upon which the rules of equitable relief are founded. "While rules and principles of equity jurisprudence are constantly expanding in the aspiration for justice in the administration of law by the courts, they should never forget that 'the sprout is to savor of the root, and go the same way.'" *Rounds,* 69 S.W.2d at 356. Even where strict enforcement of the contract results in hardship, we cannot change the rights of the parties absent ameliorating circumstances. Hard cases make bad law. "Hard cases must not be allowed to make bad equity, any more than bad law." *Moore v. Pierson,* 6 Iowa 279, 297 (1858). When special circumstances that the law of equity recognizes as grounds for relief exist, it is appropriate for equitable principles to intervene. *See, e.g., Pennsylvania Life Ins. Co. v. Simoni,* 641 N.W.2d 807 (Iowa 2002) (grounds for equitable revocation of a contract existed where we found an arbitration provision unconscionable because it was part of an adhesion contract). Because none of these conditions are present in the case before us, we conclude it is proper to enforce the notice requirement necessary for Stanek to exercise its right to renew the lease.

## IV. Conclusion

We hold equitable relief is not available for a commercial party who, through its own carelessness, failed to timely exercise its option to renew a lease agreement. We decline to jeopardize freedom of contract by stepping in and rewriting the parties' agreement to relieve the consequences of Stanek's mere forgetfulness. As such, we conclude Macerich's petition for declaratory judgment should have been sustained and Stanek's counterclaim for declaratory judgment and equitable relief should have been denied. Macerich's motion for summary judgment asserting that Stanek failed to timely exercise its option to renew the lease precludes its right to do so should have been granted. We remand for

further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

All justices concur except LAVORATO, C.J., who takes no part.