UNITED STATES of America,
Plaintiff,

v.

Angela JOHNSON, Defendant.

No. CR 00–3034–MWB,
CR 01–3046–MWB.

United States District Court,
N.D. Iowa,
Central Division.

Dec. 19, 2002.

Alfred E. Willett, Terpstra, Epping & Willett, Cedar Rapids, IA, Dean A. Stowers, Rosenberg, Stowers & Morse, Des Moines, IA, Thomas P. Frerichs, Frerichs Law Office PC, Waterloo, IA, Patrick J. Berrigan, Watson & Dameron, LLP, Kansas City, MO, Philip A. MacTaggart, Federal Public Defender, Davenport, IA, Robert R. Rigg, Des Moines, IA, for defendant.

Patrick J. Reinert, Charles J. Williams, U.S. Attorney's Office, Northern District of Iowa, Cedar Rapids, IA, for U.S.

MEMORANDUM OPINION AND OR-
DER REGARDING DEFEN-
DANT'S APPEAL OF MAGIS-
TRATE JUDGE'S ORDER ON
MOTION TO COMPEL

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I. *BACKGROUND* ...................................................944

II. *LEGAL ANALYSIS* ..............................................945
 A. *The Motion And Ruling* .................................945
 1. *The parties' arguments* ...........................945
 2. *The magistrate judge's ruling* .....................946
 3. *The motion to reconsider and the ruling* ..........947
 B. *The Parties' Arguments On Appeal* ....................947
 C. *The Standard Of Review* ..............................948
 D. *Application Of The Standard* ..........................948
 1. *Is the Stipulation ambiguous?* .....................949
 2. *Does the Stipulation apply to the documents in question?* .............951
 a. *Series "E" documents* .........................951
 b. *Series "J" documents* .........................952
 c. *Series "K" documents* .........................952

III. *CONCLUSION* ................................................953

## I. BACKGROUND

A grand jury brought two separate indictments against defendant Angela Johnson involving the alleged murder of witnesses. The grand jury handed down the first seven-count indictment on July 26, 2000, and the second ten-count indictment on August 30, 2001. On August 23, 2002, the government filed superseding indictments in both cases against Johnson. The superseding indictment in Case No. CR 00–3034–MWB charges Johnson with five counts of aiding and abetting the murder of witnesses, in violation of 18 U.S.C. §§ 1512(a)(1)(A) and (C), 1512(a)(2)(A) or 1513(a)(1)(A) and (C), 1111, and 2; one count of aiding and abetting the solicitation of the murder of witnesses, in violation of 18 U.S.C. §§ 373(a)(1) and 2; and one count of conspiracy to interfere with witnesses, in violation of 18 U.S.C. § 371. The August 23, 2002, superseding indictment in Case No. CR 01–3046–MWB

charges Johnson with five counts of killing witnesses while engaging in a drug-trafficking conspiracy ("conspiracy murder"), in violation of 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 2; and five counts of killing the same witnesses in furtherance of a continuing criminal enterprise ("CCE murder"), in violation of 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 2. The five murder victims identified in the second indictment are the same five murder victims identified in Counts 1 through 5 of the first indictment. Trial on both indictments is currently scheduled to begin on March 10, 2003, although the defendant's December 11, 2002, motion for a continuance of the trial is also pending before the court.

The matter now before the court is Johnson's June 7, 2002, appeal in each case (docket nos. 313 and 65, respectively) of a May 30, 2002, ruling of a magistrate judge (docket nos. 310 and 63, respectively) de-

nying in part and granting in part Johnson's April 24, 2002, motion to compel (docket nos. 279 and 44, respectively). Johnson's motion to compel involves copying of documents identified by the parties as Bates-stamped documents in Series "E" (Johnson's jail records and intercepted correspondence), Series "J" (Dustin Honken's intercepted correspondence and Woodbury County Jail records), and Series "K" (files identified as McNeese Jencks Act materials).

## II. LEGAL ANALYSIS

### A. The Motion And Ruling

#### 1. The parties' arguments

In her motion to compel, Johnson asserted that the government had failed to produce copies of the three kinds of documents at issue, even though she was entitled to them under a certain provision of an Amendment to Stipulated Discovery Order (the Stipulation). The provision in question states, "Should defense counsel want copies of non-interview documents or tapes from these discovery files, the parties shall determine the most expeditious manner for copying." Stipulation, ¶ 6. Johnson argued that, based upon the language of the Stipulation, the government should be compelled to provide copies of the documents in question. However, she contended that, despite personal conferences between counsel for the parties, the parties were at an impasse over production of the copies, because the government would not agree to comply with the Stipulation and the defense would not release the government from its obligation to comply with the Stipulation and would not make concessions to procure such compliance.

The government resisted the motion, on the ground that the documents in Series "E" and Series "K" had already been provided to Johnson, albeit not in Bates-stamped format. The government argued that it had offered Bates-stamped documents to replace the sets already in defense hands, but would do so only if Johnson returned the sets of those documents that she already has and only with a watermark that Johnson finds objectionable. The government also suggested that the defense team could manually annotate the copies already in its possession by comparing them to the Bates-stamped documents in the discovery file, if the watermark was objectionable. The government also argued that Johnson should have returned the Jencks Act materials in Series "K" that she had received before the hearings on suppression of McNeese's evidence. As to the documents in Series "J," the government argued that the materials were in the open file for discovery, and individual documents could be copied upon an adequate showing of entitlement, but that there was no justification for wholesale copying of the entire Series. At the invitation of Magistrate Judge Paul A. Zoss, during a hearing on Johnson's motion to compel, the government filed a supplemental brief concerning the language of paragraph 6 of the Stipulation, asserting, in essence, that the language is ambiguous. However, the government suggested that Johnson check out the materials in question, pursuant to the terms of the Stipulation, then request a copy of particular documents. Only if the parties could not agree on whether the requested documents could be copied, the government argued, would a dispute about production of those documents be ripe. The government argued that such an arrangement would be within the spirit of the Stipulation.

In her reply, Johnson argued that the government had not provided all of the documents in Series "E," but had only provided some of the documents, none of which were Bates-stamped. Moreover, she contended that the government had never agreed to produce watermarked cop-

ies of those documents and was improperly demanding return of previously produced documents and improperly demanding a waiver of rights to other discovery under the Stipulation or prior discovery orders in order to get the copies she was entitled to under the Stipulation. She also argued that, with respect to Series "J" documents, the government was ignoring its agreement to produce the documents under the Stipulation by asserting narrower case law. As to Series "K" materials, Johnson argued that it did not appear that she had received all of the documents and, more importantly, that the Stipulation provides that such non-interview materials shall be copied upon request, but the government is refusing to follow the Stipulation. Moreover, she argued that the requests for Bates-stamped copies of documents previously produced is not new, but was instead contemplated in negotiation of the Stipulation and, indeed, was the reason for the "non-interview documents" clause in that Stipulation. Therefore, she contended that the government is simply trying to go back on its agreement as part of a continuing pattern of obstructive and unreasonable behavior.

### 2. The magistrate judge's ruling

In his ruling on Johnson's motion to compel, filed on May 30, 2002, Magistrate Judge Zoss pointed out that Johnson has access to all of the documents in question in her motion to compel pursuant to prior stipulations and orders regarding discovery. Therefore, he concluded that the dispute then before the court was whether the government is required to provide *copies* of these documents to Johnson's attorneys.

As to the documents in Series "E," Judge Zoss concluded that the government's offer to trade Johnson's unstamped copies for Bates-stamped and watermarked copies was "reasonable," and that Johnson had failed to provide persuasive support for her resistance to the government's proposal. Therefore, he granted in part and denied in part Johnson's request for an order compelling production of the documents in Series "E." Specifically, he ordered Johnson to return her copies of Series "E" Notebooks 8, 9, and 10, to the government, and upon receipt of those documents, directed the government to deliver to Johnson's defense team Bates-stamped copies of the documents in those notebooks, which Judge Zoss concluded could be watermarked, as authorized by the Stipulation, but upon Johnson's request, the government is to provide Johnson with non-watermarked copies of documents that she intends to use as exhibits at trial. Subject to the same requirements, Judge Zoss ordered the government to provide copies of the documents in Notebook 31 of Series "E," which had not previously been provided.

As to the documents in Series "J," identified as correspondence and jail records relating to Dustin Honken, Judge Zoss found that the crux of the dispute was the meaning of the "problematic" language in paragraph 6 of the Stipulation, which states, "Should defense counsel want copies of non-interview documents or tapes from these discovery files, the parties shall determine the most expeditious manner for copying." Judge Zoss concluded, based on the representations of the prosecution and defense counsel concerning their recollections, or lack thereof, of what was intended by the language in question, that there was no agreement between the parties that the government would provide to the defense the unfettered right to copies of nearly everything in the discovery file. Although the parties had agreed that the defense would be provided with copies of substantial parts of the discovery file, Judge Zoss concluded that the parties had not delineated clearly in the Stipulation the parts that could be copied. Judge

Zoss found that the parties' mutual intent and purpose when they negotiated the Stipulation was that the government would provide the defense with copies of documents where the production of such copies would not harm any significant governmental interest, and where production of the copies meets a particular and significant need of the defense.

Applying this standard to the documents in Series "J," Judge Zoss concluded that the record does not establish any harm that would result to the government if it were required to produce copies of those documents to the defense, but neither did the record support a particular or significant need for the defense to have such copies. He also pointed out that the defense can examine, contemplate, and make notes from these records during its review of the discovery file, and one attorney for the defense could check out the pertinent volumes at any time for review in his office, although he could not make copies of them. Therefore, Judge Zoss declined to order the government to produce copies of the documents in question, although he ordered the government to provide a non-watermarked copy of any Series "J" document that Johnson intends to offer as an exhibit at trial.

As to the Series "K" documents, identified as McNeese Jencks Act materials, Judge Zoss concluded that Johnson had advanced no authority to support her request for copies of the documents in question. Therefore, he ruled that Johnson may make her own page-by-page comparison of the documents in her possession with the documents in the discovery file to determine whether anything is missing. Judge Zoss declined to consider the government's informal request for return of the documents on the ground that the request was not properly before the court at that time.

### 3. The motion to reconsider and the ruling

On June 7, 2002, Johnson filed a Motion To Reconsider, And If Denied, Appeal Of Magistrate Judge's Order On Motion To Compel. Because Johnson couched her motion to reconsider in the alternative as an appeal, the court will recount the parties' arguments in support of and resistance to that motion only once, below, in reference to Johnson's appeal. On June 10, 2002, Judge Zoss denied Johnson's motion to reconsider. Judge Zoss concluded that Johnson's attorneys' recollections of the negotiations between the parties only served to demonstrate that there was never a meeting of the minds between the parties as to whether the plaintiff had to provide copies of all non-interview documents in the discovery file. Thus, the alternative appeal of Judge Zoss's original decision on Johnson's motion to compel was triggered.

### B. The Parties' Arguments On Appeal

On appeal, Johnson argues that the provision of the parties' stipulation regarding "non-interview documents" was material to the defense and was part of the consideration for the defense's agreement to other "extreme" restrictions on discovery. Had the provision not been in the agreement, Johnson argues, the defense likely would not have agreed to the restrictions. Therefore, she recounts the history of the parties' negotiations of the Stipulation. On the basis of her counsels' recollections of those negotiations, Johnson asserts that the government has misinformed Judge Zoss and that this court should consider sanctions against government counsel.

Somewhat more specifically, Johnson argues that one aspect of Judge Zoss's order that is "troublesome" is the passage in which Judge Zoss finds that the defendant should return copies of certain documents, because the government's request that she

do so, in exchange for watermarked copies, is "reasonable." First, Johnson doubts the "reasonableness" of the government's request, and, second, Johnson argues that it is improper to measure the government's refusal to produce copies against a "reasonableness" standard, when her requests for copies of documents must be supported by "a particular and significant need." She argues that much of the material is her own documents or statements, that it is material to her defense, and that it is intended as government exhibits, so that it qualifies as Rule 16 discovery. She also argues that a characterization of the government's conduct as "reasonable" is not supported by the record, but even if it is, it is equally "reasonable" for the defendant to refuse to return copies of discovery to the government in exchange for a promise of future performance. Moreover, she contends that the government has not moved for return of the copies and there is no known authority for the court to issue such an order under these circumstances.

On June 19, 2002, the government responded to Johnson's appeal of Judge Zoss's ruling on her motion to compel. In the first instance, the government incorporates by reference its prior arguments to Judge Zoss. Next, the government argues that Johnson seeks to consume more court time rearguing matters already presented to the magistrate judge in the hope of obtaining a different result. The government takes umbrage at the suggestion that it has made any misrepresentations to Judge Zoss, and argues that Judge Zoss properly concluded that there was no meeting of the minds regarding the "non-interview documents" Johnson has requested. The government also argues that its request that Johnson return non-Bates-stamped documents in return for Bates-stamped copies is reasonable by any definition.

## C. The Standard Of Review

Section 636(b)(1)(A) of Title 28 provides both the authority for a magistrate judge to consider Johnson's motion to compel and the standard of review this court must apply to Judge Zoss's rulings on Johnson's appeal of the denial of her motion. Section 636(b)(1)(A) provides that "a judge may designate a magistrate to hear and determine any pretrial matter pending before the court," with certain exceptions not applicable here, and provides, further, that "[a] judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); see also In re Lane, 801 F.2d 1040, 1042 (8th Cir.1986) (noting that 28 U.S.C. § 636(b)(1)(A) "authorizes district courts to designate magistrates to hear and determine pretrial matters" and "[t]he Act also provides that any decision of the magistrate on pretrial matters is reviewable by the district court, which may set aside any part of the magistrate's order it finds to be clearly erroneous or contrary to law") (citations omitted).

## D. Application Of The Standard

The court agrees with Judge Zoss's conclusion that Johnson has access to all of the documents in question in her motion to compel pursuant to prior stipulations and orders regarding discovery and his further characterization of the motion to compel as involving a dispute about whether the government is required to provide copies of these documents to Johnson's attorneys. Indeed, Johnson does not argue to the contrary on appeal. Thus, the questions on appeal are, first, whether the parties' Stipulation requires the government to provide copies of certain documents, or if production of copies is instead governed by the balancing test Judge Zoss applied, and, second, whether the documents in question fall within either the Stipulation or Judge

Zoss's test of documents for which copies must be produced, whichever standard applies.

### 1. Is the Stipulation ambiguous?

 Judge Zoss implicitly applied rules of contract interpretation to the parties' Stipulation, for example, by considering whether there was a "meeting of the minds" regarding copying of documents. The court agrees that the parties' Stipulation must be construed according to contract principles. *Cf. MidAmerican Energy Co. v. Great Am. Ins. Co.*, 171 F.Supp.2d 835, 853–55 (N.D.Iowa 2001) (applying contract principles to the parties' stipulation concerning use of test results as evidence at trial); *Engineered Products Co. v. Donaldson Co., Inc.*, 225 F.Supp.2d 1069, 1131 (N.D.Iowa 2002) (the parties' stipulation for dismissal of certain claims and counterclaims was subject to contract principles, even though later embodied in a court order, citing *MidAmerican Energy* ). Moreover, the applicable contract principles are a matter of state law. *See id.*

By resorting to extrinsic evidence concerning the parties' recollections, or lack thereof, of what was intended by the language in question, and examining their correspondence during the course of their negotiations, Judge Zoss also implicitly concluded that the "problematic" language of the last sentence of paragraph 6 was ambiguous. *See, e.g., Hartig Drug Co. v. Hartig*, 602 N.W.2d 794, 797 (Iowa 1999) ("If the contract is ambiguous and uncertain, extrinsic evidence can be considered to help determine the intent."). He then interpreted the disputed language of the Stipulation in light of extrinsic evidence to conclude that the parties' mutual intent and purpose when they negotiated the Stipulation was that the government would provide the defense with copies of documents where the production of such copies would not harm any significant governmental interest, and where production of

the copies meets a particular and significant need of the defense.

As the Iowa Supreme Court recently explained,

It is a cardinal principle of contract law the parties' intention at the time they executed the contract controls. *State Pub. Defender [v. Iowa Dist. Ct.]*, 594 N.W.2d [34,] 37 [ (Iowa 1999) ]. Absent ambiguity, intent is determined by the written words of the contract itself. *Iowa Fuel & Minerals, Inc. v. Iowa State Bd. of Regents*, 471 N.W.2d 859, 862 (Iowa 1991). This is not to say, however, ambiguity is required before we may consult extrinsic evidence.

The rule of contract interpretation which provides words and other conduct are interpreted in light of all the circumstances is not limited to cases when ambiguity exists. *Fausel v. JRJ Enters., Inc.*, 603 N.W.2d 612, 618 (Iowa 1999). From the words of the agreement, we must determine "what meanings are reasonably possible." *Walsh v. Nelson*, 622 N.W.2d 499, 503 (Iowa 2001). We must also determine whether a disputed term is ambiguous. *Id.* A term is not ambiguous simply because two parties disagree about its meaning. *Id.* Any determination of meaning or ambiguity must be made in light of all the circumstances, including the relations of the parties, subject matter of the transaction, preliminary negotiations, usages of trade and the course of dealing. *Id.* But, after the agreement "has been shown in all its length and breadth, the words of an integrated agreement remain the most important evidence of intention." *Fausel*, 603 N.W.2d at 618. When determining the meaning of a contract, we look both to the terms of the contract as well as to any documents included by reference.

*Hofmeyer v. Iowa Dist. Court for Fayette County*, 640 N.W.2d 225, 228 (Iowa 2001).

Under Iowa law, "[t]he contract will be strictly construed if its words are clear and unambiguous." *SDG Macerich Properties, L.P. v. Stanek Inc.*, 648 N.W.2d 581, 586 (Iowa 2002).

■ Again, the crux of the dispute here is the meaning of the language in the last sentence to paragraph 6 of the Stipulation, which states, "Should defense counsel want copies of non-interview documents or tapes from these discovery files, the parties shall determine the most expeditious manner for copying." Stipulation, ¶ 6. Here, the court must respectfully disagree with Judge Zoss's implicit conclusion that the disputed term of the Stipulation is ambiguous and also with his explicit conclusion that the record of negotiations demonstrated that there was no "meeting of the minds" regarding copying of the documents in question. Rather, relying on the words of the Stipulation as "the most important evidence of intention," and finding no ambiguity in the disputed terms, *see Hofmeyer*, 640 N.W.2d at 228, the court concludes that the last sentence of paragraph 6 unambiguously provides that, if the defendant wants copies of certain documents—specifically, "non-interview documents"—the only issue is *how and when copies* will be produced, not *whether* copies will be produced. This is so, because the stipulation states, quite plainly, "Should defense counsel want copies," the parties will "determine the *most expeditious manner* for copying," Stipulation, ¶ 6 (emphasis added), not determine whether the documents in question *should be* copied. The government has not generated an ambiguity simply by disputing the meaning of the sentence. *See Hofmeyer*, 640 N.W.2d at 228 ("A term is not ambiguous simply because two parties disagree about its meaning."). Indeed, the court concludes that, based on the words of the agreement, reading the disputed sentence to mean that a dispute about production of copies of certain documents would be ripe only if the parties could not agree on whether the requested documents could be copied, as the government argues, simply is not a meaning that is "reasonably possible." *Id.* Instead, "[a]bsent ambiguity, intent is determined by the written words of the contract itself." *Id.* Judge Zoss's different interpretation, therefore, was erroneous and contrary to law. *See* 28 U.S.C. § 636(b)(1)(A) (standard of review); *see also In re Lane*, 801 F.2d at 1042 (same).[1] Instead, because the court concludes that the disputed language of the Stipulation is clear and unambiguous, it must be strictly

---

1. Moreover, even if the language of this part of the Stipulation were ambiguous, as Judge Zoss apparently concluded, the court has not found any basis for balancing whether the defendant has shown a "significant and particular need" for certain copies against any "harm to the governmental interest," which is the standard Judge Zoss concluded that the parties intended. Such a standard is nowhere to be found in the Stipulation, the samples of correspondence exchanged between the parties during negotiation of the Stipulation, applicable Rules of the Federal Rules of Criminal Procedure, or applicable case law, and Judge Zoss cites no authority for it or evidence in the parties' negotiations indicating its applicability. It is true that a defendant must make a showing of "particularized need" to get grand jury transcripts.

*See, e.g., U.S. v. Wilkinson*, 124 F.3d 971, 977 (8th Cir.1997) ("While the Federal Rules of Criminal Procedure authorize disclosure of grand jury transcripts under certain circumstances, *see* Fed.R.Crim.P. 6(e)(3), parties seeking such disclosure 'must show a "particularized need," ' and the decision to permit disclosure lies within the sound discretion of the trial judge,' *United States v. Benson*, 760 F.2d 862, 864 (8th Cir.), *cert. denied*, 474 U.S. 858, 106 S.Ct. 166, 88 L.Ed.2d 137 (1985)."). However, grand jury transcripts are not the materials at issue in Johnson's motion to compel or the pertinent part of the parties' Stipulation. Thus, the balancing standard applied by Judge Zoss cannot be justified either on the basis of applicable authorities or evidence concerning the parties' negotiation of the Stipulation.

construed—and hence, enforced—according to its terms. *SDG Macerich Properties, L.P.*, 648 N.W.2d at 586.

### 2. Does the Stipulation apply to the documents in question?

Because the court concludes that the Stipulation unambiguously requires the government to produce copies of "non-interview documents" if defense counsel "want[s]" such copies, the court turns, next, to the question of whether the documents that Johnson "wants" in her motion to compel are such "non-interview documents." The court concludes that each kind of document sought in Johnson's motion to compel is such a "non-interview document," as all of the materials in question appear to be documents that were *not* generated by interviews of witnesses or suspects with law enforcement officers. Indeed, the government does not appear ever to have argued otherwise. However, the court will consider each "series" of documents at issue on the motion to compel in further detail.

### a. Series "E" documents

■ The first category of documents for which Johnson seeks copies on her motion to compel is Bates-stamped documents in Series "E," which consist of Johnson's jail records and intercepted correspondence. For the reasons stated just above, these documents appear to be "non-interview documents" subject to the last sentence of paragraph 6 of the Stipulation. Thus, the government is required to produce copies of such documents if Johnson's defense counsel "want[s]" them.[2] Judge Zoss

ruled that the government was required to produce the copies, but placed certain restrictions upon production of those copies, which this court concludes were clearly erroneous under or unsupported by applicable authority or the terms of the Stipulation.

First, the court concludes that Judge Zoss erroneously applied a "reasonableness" standard to the question of whether or not Johnson should be required to return copies of the Series "E" documents that she had already obtained to obtain Bates-stamped copies. The Stipulation states that the parties must "determine the *most expeditious manner* for copying," Stipulation, ¶ 6 (emphasis added), not certain conditions—such as return of unstamped copies—that the defendant must meet to obtain copies of the documents. Neither the Stipulation nor any case law cited to the court requires Johnson to give anything back to get copies of "non-interview documents" pursuant to the Stipulation. The court is not entitled, by way of "interpretation," to engraft additional requirements, even "reasonable" ones, onto the parties' Stipulation. To put it another way, the government has not produced any evidence that it provided Johnson with the original, unstamped copies on the condition that Johnson could obtain only one set, or that the Stipulation requires the government to produce Bates-stamped copies only upon return of unstamped copies. The Stipulation provides only for return or destruction of copies "upon completion of this case or the disassociation of [counsel, an expert, or other person] with the litigation of this case." Stipulation at ¶ 9.[3] Fur-

---

**2.** Indeed, there is considerable merit to Johnson's contention that these documents must be produced pursuant to Rule 16 and nothing in the Stipulation, however interpreted, is to the contrary.

**3.** The government has articulated no reason why it has an interest in getting back John-

son's unstamped copies. The court can imagine that the government has concerns with too many unstamped copies being out of its control, but the government hasn't articulated any such reason here. Moreover, because the defense is obligated to return or destroy copies of any documents obtained in discovery

thermore, in the court's view, it is absurdly burdensome for defense counsel to have to compare unstamped copies of documents with Bates-stamped copies in the discovery file, then transfer the Bates-stamped numbering to such unstamped copies. Such a procedure would defeat the purpose of Bates-stamping documents, which is obviously to ensure identity, sequence, and completeness of sets of documents.

Again, because the stipulation requires the government to provide copies, the government is not entitled to put additional conditions on providing such copies, however "reasonable." That said, however, the court does believe that the government must be allowed to watermark all copies, as such a condition is well within the meaning and spirit of the Stipulation, which elsewhere allows the government to watermark copies, as long as the government also provides the defendant, upon request, with non-watermarked copies for use as trial exhibits.

Therefore, Judge Zoss's ruling regarding production of copies of documents in Series "E" will be reversed in part and affirmed in part. Specifically, contrary to Judge Zoss's ruling, production of Bates-stamped copies of Series "E" documents will not be conditioned upon return by Johnson of unstamped copies of those documents that she has previously received. However, as Judge Zoss otherwise directed, the government must produce copies of Series "E" Notebooks 8, 9, 10, and 31, but may watermark those copies, as authorized by the Stipulation, except that, upon Johnson's request, the government is to provide

Johnson with non-watermarked copies of documents that she intends to use as exhibits at trial.

#### b. Series "J" documents

The next set of documents at issue in Johnson's motion to compel is the documents in Series "J," identified by the parties as Dustin Honken's intercepted correspondence and Woodbury County Jail records. Judge Zoss denied Johnson's motion to compel copies of such documents. However, the court concludes that Judge Zoss's disposition of Johnson's motion to compel with respect to Series "J" documents must be reversed in its entirety, because Judge Zoss's application of a balancing test was clearly erroneous. The documents fall within the unambiguous requirement that the defendant gets copies of such "non-interview documents" if she "want[s]" them. The unambiguous terms of the Stipulation must be "strictly construed," which here requires production of copies of the documents in Series "K." *SDG Macerich Properties, L.P.*, 648 N.W.2d at 586.

#### c. Series "K" documents

Finally, the court turns to the documents in Series "K," which are identified by the parties as McNeese Jencks Act materials. Judge Zoss's conclusion that Johnson had advanced no authority to support her request for copies of these documents. was clearly erroneous, and will therefore be reversed in its entirety, because paragraph 6 of the Stipulation unam-

---

upon completion of the case, and the Stipulation otherwise regulates what can be done with any copies, that interest of the government appears to the court to be adequately protected. Similarly, while the court can imagine that defense counsel's reluctance to return unstamped copies stems from a concern that any notes or other markings that defense counsel or the defendant has made on

them might reveal trial strategy or other privileged information, the defendant also hasn't articulated any such concern. The court need not rely on this possible explanation for the defendant's refusal to return previously produced copies, to determine whether her actions are "reasonable," because the Stipulation placed no "reasonableness" requirement on her right to obtain copies.

biguously provided for production of such "non-interview documents." Moreover, the fact that this conclusion gives Johnson more than the Jencks Act or case law under that Act would require is in no way a basis for imposing additional limitations not found in the Stipulation, where the government put the documents in the open discovery file, then stipulated that the defendant could get copies of such "non-interview documents" if she "want[ed]" them. Again, the unambiguous terms of the Stipulation must be "strictly construed," which here requires production of copies of the documents in Series "K." *SDG Macerich Properties, L.P.,* 648 N.W.2d at 586.

### III. CONCLUSION

In light of the foregoing, upon Johnson's June 7, 2002, appeal in each case (docket nos. 313 and 65, respectively), Judge Zoss's May 30, 2002, ruling in each case (docket nos. 310 and 63, respectively) on Johnson's April 24, 2002, motion to compel (docket nos. 279 and 44, respectively) is **reversed in part and affirmed in part.** Specifically,

1. As to the documents in Series "E," Judge Zoss's ruling is

a. **reversed** to the extent that it required Johnson to return her unstamped copies of some of the documents in this Series in order to obtain Bates-stamped copies; but

b. **affirmed** to the extent that it requires the government to produce copies of Series "E" Notebooks 8, 9, 10, and 31, and allows the government to watermark those copies, as authorized by the Stipulation, upon condition that, upon Johnson's request, the government will provide Johnson with non-watermarked copies of documents that she intends to use as exhibits at trial.

2. As to the documents in Series "J," Judge Zoss's ruling is **reversed in its en-**tirety. Instead, the government shall deliver to Johnson's defense team Bates-stamped copies of the requested documents in Series "J," which may be watermarked by the government, as authorized by the Stipulation, but upon Johnson's request, the government is to provide Johnson with non-watermarked copies of documents in this Series that she intends to use as exhibits at trial.

3. As to the documents in Series "K," Judge Zoss's ruling is also **reversed in its entirety.** Instead, the government shall deliver to Johnson's defense team Bates-stamped copies of the requested documents in Series "K," which may be watermarked by the government, as authorized by the Stipulation, but upon Johnson's request, the government is to provide Johnson with non-watermarked copies of documents in this Series that she intends to use as exhibits at trial.

**IT IS SO ORDERED.**