# In the Iowa Supreme Court

No. 24–0763

Submitted February 19, 2026—Filed May 22, 2026

**MidWestOne Bank,** as trustee of the **Haywood B. Belle Family Trust,**

Appellee,

vs.

**Short's Burger & Shine, LLC, Kevin Perez,** and **Dan Ouverson,**

Appellants.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Johnson County, David M. Cox, judge.

**Decision of Court of Appeals and District Court Judgment Affirmed.**

Christensen, C.J., delivered the opinion of the court, in which Waterman, McDonald, McDermott, and May, JJ., joined. Mansfield, J., filed a dissenting opinion, in which Oxley, J., joined.

Shawn Shearer (argued) of The Shearer Law Office, P.C., University Heights, for appellants.

Siobhan Briley (argued) and Benjamin G. Nielson (until withdrawal) of Pugh Hagan Prahm PLC, Coralville, for appellee.

**Christensen, Chief Justice.**

### I. Introduction.

Short's Burger & Shine, LLC (Short's) appeals from an order and writ of removal and possession in a commercial forcible-entry-and-detainer (FED) action brought by MidWestOne Bank (MWO). The court of appeals affirmed the rulings of the lower courts, and we do the same.

### II. Facts.

Short's has held a lease to its premises since May 1, 2011. The lease terms provided Short's with the option to "renew th[e] lease for 7 additional terms of 3 years each by giving Landlord a written notice of intent to renew at least 90 days prior to the expiration of the term that precedes each such renewal term." This meant it had a deadline of January 30 of each year to exercise its lease option before the lease was set to expire.

The lease had the following additional provisions at issue in this appeal. Short's would default on the lease if it "failed to engage in its usual and customary business activities on the premises for more than fifteen (15) consecutive business days." Short's also could not "make . . . structural alterations or improvements without the prior written consent of the Landlord." Additionally, the lease provided, "None of the covenants, provisions, terms or conditions of this lease shall be modified, waived or abandoned, except by a written instrument duly signed by the parties. This lease contains the whole agreement of the parties."

From April to August 2022, Short's closed temporarily to remodel and repair the interior, without written consent from MWO. An individual identified as Garland Rosenbush emailed the *Iowa City Press-Citizen* to provide a statement regarding its closure. According to Rosenbush's email, the building

was "crumbling" and wasn't "going to be standing." Rosenbush relayed that he was in contact with the property owners regarding the structural issues. These statements were published in the *Iowa City Press-Citizen.* No credible evidence was presented that Short's informed MWO of its reported concerns with the structural issues of the building, and it was later revealed that "Garland Rosenbush" was actually an alias for one of the two Short's owners.

On May 10, 2022, MWO provided notice that the closure was an event of default under paragraph 16(A)(3) of the lease agreement and demanded that Short's cease renovations. Short's responded that it could not open because the natural gas had been shut off during the renovations, and it would not be able to reopen until the renovations were concluded. While Short's claimed that the natural gas had been shut off because of the condition of the wall where the gas meters were located, other gas meters located on the same wall remained operational. The renovation and repair efforts cost "between $45[,000] and $60,000." These efforts included installing new kitchen equipment and televisions, repairs to the interior, and repainting much of the interior, including a 100-year-old brick wall that was part of the original building. Short's conducted all these efforts without obtaining any form of approval from their landlord, MWO.

Short's failed to reopen within ten days of receiving notice, as required under the lease. On May 24, MWO responded by providing Short's with a notice of termination of tenancy that declared the lease "is terminated" and demanded that Short's vacate the premises by June 30. Short's neither vacated the premises nor ceased renovations. On July 7, MWO issued a three-day notice to quit, and Short's again neither vacated nor ceased renovations. MWO then initiated the first of three FED actions on July 15. After the initiation of the first

FED action (FED#1), Short's continued to remodel the space, renewed insurance coverage beyond the date of lease expiration, and paid rent despite MWO's refusal to accept the payments. A key argument made by Short's during FED#1 was that "business days," as contemplated under the lease, did not include Saturdays and Sundays. MWO insisted that "business days" meant every day the store conducted its regular business, and Short's was open on the weekends.

Sometime in January 2023, MWO filed a second FED action (FED#2). On March 9, 2023, MWO voluntarily dismissed FED#1 with prejudice and FED#2 without prejudice. Within an hour of these dismissals, Short's received a letter directing it to vacate the premises by April 30 because the window for renewal had expired. One day later, on March 10, Short's responded that it had, both in writing and orally, timely exercised its option to renew. MWO claimed this was the first it had heard of an intent to exercise the option to renew outlined in the lease.

Short's did not vacate the premises by April 30, prompting MWO to file a third FED action (FED#3). During the FED proceedings, Short's argued that oral renewal was sufficient and that Short's renewed prior to January 30. Short's also argued that the June 2022 termination of the lease operated as a revocation of the option to renew until MWO dismissed FED#1 in March 2023. Accordingly, Short's claimed that it should have been given a reasonable opportunity to exercise the option to renew in March because it could not renew by the January 30 deadline while FED#1 was pending.

A magistrate entered judgment and issued an order of possession in MWO's favor. Short's appealed to the district court, which affirmed the magistrate's ruling. We granted discretionary review to Short's and transferred the case to the court of appeals. The court of appeals affirmed the magistrate

and district court rulings. Short's filed an application for further review; we accepted and hereby affirm the lower court decisions.

### III. Analysis.

"Forcible entry and detainer actions are equitable actions, and therefore our scope of review is de novo." *Porter v. Harden*, 891 N.W.2d 420, 423–24 (Iowa 2017). "The only question in a forcible entry and detainer action is whether the defendant is wrongfully detaining possession of the real property at the time of the trial." *Bernet v. Rogers*, 519 N.W.2d 808, 811 (Iowa 1994).

While our review is de novo, we still generally defer to the district court's factual findings when reviewing FED actions. *Butter v. Midwest Prop. Mgmt. IC, LLC*, 29 N.W.3d 626, 630 (Iowa 2025) ("We are bound by the district court's factual findings if there is substantial evidence to support them.") "[W]e view the evidence in a light most favorable to upholding the district court's judgment." *Benson v. Webster*, 593 N.W.2d 126, 129 (Iowa 1999). When the evidence is in conflict, the weighing of testimony and decisions about the credibility of witnesses are entrusted to the trier of fact. *See Seastrom v. Farm Bureau Life Ins.*, 601 N.W.2d 339, 346 (Iowa 1999).

Short's raises three arguments on appeal: (1) the lease was modified to allow for oral renewal, which it argues was provided; (2) MWO's termination of the lease on May 24, 2022, revoked the option offer; and (3) its performance of the notice requirements is excused because MWO repudiated the lease. We disagree with all three arguments.

**A. Modification of Lease.** An option contract is an offer that remains open until a specific date, after which it may no longer be accepted. *SDG Macerich Props., L.P. v. Stanek Inc.*, 648 N.W.2d 581, 585 (Iowa 2002). An option contracts have two crucial characteristics: "(1) that they are open for the specified time, or

if no time is specified, for a reasonable time; and (2) that they are unilateral in nature, binding the optionor but leaving the optionee free to either accept or not, at his or her whim." 1 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 5:17, at 853 (4th ed. 2022). "It cannot be unilaterally withdrawn." *Id.* at § 5:18, at 862; *Maytag Co. v. Alward*, 112 N.W.2d 654, 657 (Iowa 1962) ("An option is a continuing offer which the offeror may not withdraw until the time fixed has expired because the offer is based on a consideration.").

We typically require strict adherence to the conditions precedent to exercise an option contract. *Pitz v. U.S. Cellular Operating Co. of Dubuque*, 989 N.W.2d 636, 640 (Iowa 2023) ("A party exercising an option must strictly comply with conditions precedent.") "Substantial performance is not good enough." *Id.*

Here, the offer to renew the lease for the additional term was open until January 31, 2023. Short's did not offer written notice of its intent to renew until March 2023, after the offer could no longer be accepted. Short's now attempts to circumvent the timing problem by arguing that the option offer was modified to allow for alternative forms of notice, including oral notice. And Short's points to its conduct in continuing renovations, defending FED actions, and purchasing insurance as sufficient evidence of its intent to renew. While these actions were reported in the press, MWO's trust officer testified that he was not provided with copies of any such article and was otherwise unaware that Short's intended to exercise the option.

Short's bears the burden to prove lease modification by a preponderance of the evidence. *See Roth v. Boies*, 115 N.W. 930, 932 (Iowa 1908) (placing burden of proof by preponderance of the evidence on party alleging modification of partnership contract); *Wheeler v. Baker*, 12 N.W. 767, 769 (Iowa 1882) (lessee

alleging oral modification of written lease bears burden of proof). A written contract may be modified by a subsequent oral agreement. *Smidt v. Porter*, 695 N.W.2d 9, 21 (Iowa 2005). Consent to modification may be either express or implied from acts and conduct. *Davenport Osteopathic Hosp. Ass'n of Davenport, Iowa v. Hosp. Serv., Inc. of Iowa*, 154 N.W.2d 153, 157 (Iowa 1967).

As the basis for lease modification, Short's argues that MWO's acceptance of oral renewal in the past operated as an oral modification to their written agreement. MWO's trust officer conceded that MWO had accepted oral renewal in the past and opined that it likely would have accepted another oral renewal if it were presented with the opportunity. However, according to the evidence presented by MWO, Short's provided MWO with no notice, oral or otherwise, of its intent to exercise the option prior to its expiration.

After hearing and reviewing both parties' testimony and evidence, the magistrate concluded that the renewal language in the lease was controlling, and there was insufficient evidence to establish modification. The district court and the court of appeals affirmed that finding. We join the lower courts in holding that Short's has not adequately shown modification of the lease.

**B. MWO's Declaration of Termination.** Short's argues that under equitable principles, it should have been allowed additional time to accept the option offer once MWO retracted termination of the lease because Short's could not exercise an option to renew when MWO purported to terminate the entire lease on May 24, 2022.

Short's invokes the doctrine of unclean hands[1], asserting that MWO initiated FED#1 to prevent Short's from being able to invoke its option. To excuse

---

[1]The doctrine of unclean hands prevents a contracted party from escaping their contractual responsibilities by engineering a situation that prevents the other party from

its delay, Short's must show that it was "prevented from performing by obstructive and delaying tactics on the part of [MWO] so as to prevent timely performance, payment or tender." *Figge v. Clark*, 174 N.W.2d 432, 435 (Iowa 1970). But as the magistrate and district courts pointed out, Short's was not prevented from exercising its option to renew during the pendency of FED#1; it simply chose not to do so for whatever reason.

Additionally, to properly invoke this doctrine, the record must indicate that the initiation of FED#1 was "done in bad faith or otherwise violate the conscience." *Homeland Energy Sols., LLC v. Retterath*, 938 N.W.2d 664, 704 (Iowa 2020). The record does not support such a finding. The evidence shows that MWO initiated FED#1 based on its good-faith belief that Short's had breached the lease agreement by not being open for business for at least fifteen consecutive days and making structural changes without written consent. Those FED actions were dismissed after Short's failed to provide notice of renewal and the lease was set to expire.

Short's abided by its recurrent duties under the lease during the pendency of FED#1 (e.g., paying rent) yet abstained from invoking the very option it insists it intended to invoke.

Short's continued to perform under the lease by paying rent but declined to perform the one act necessary to extend it: exercising the renewal option. Short's cannot treat the lease as both operative and terminated at the same time. This provides the basis for MWO's belief that Short's did not intend to trigger the option for this lease term and explains MWO's decision to forgo litigation of the other FED actions. It also supports the conclusions of the lower courts that

---

performing their contractual duties. *Homeland Energy Solutions, LLC v. Retterath*, 938 N.W.2d 664, 704 (Iowa 2020).

Short's had simply forgotten to invoke the option. Mere forgetfulness does not entitle a party to equitable relief. *SDG Macerich Props.*, 648 N.W.2d at 583 ("Equity aids the vigilant, not those who forget to perform a legal duty."). To accept the contrary would "weaken the sanctity and predictability of the written word," and would be a Pandora's box we would rather leave closed. *Id.* at 588. Therefore, MWO's declaration of termination does not entitle Short's to equitable relief.

**C. Repudiation.** Short's argues that the option to renew was not available because MWO's conduct during the pendency of the FED#1 litigation amounted to a repudiation. If MWO did repudiate, Short's might be excused from timely exercising its renewal option. *See Conrad Bros. v. John Deere Ins.*, 640 N.W.2d 231, 241 (Iowa 2001). To demonstrate repudiation, Short's highlights the following conduct: (1) MWO's initiation of the termination process outlined by the lease agreement, and (2) MWO's pursuit and voluntary dismissal of the first two FED actions.

Repudiation occurs where "the promisor makes a definite statement to the promisee that he either will not or can not perform his contract" *unless* "the promisor had some justifying cause for his statement." 10 John E. Murray, Jr., *Corbin on Contracts: Breach of Contract* § 54.1, at 117 (rev. ed. 2014) [hereinafter *Corbin on Contracts*]. A repudiation may occur through two mechanisms: "a statement by the obligor to the obligee indicating that the obligor will commit a breach that would of itself give the obligee a claim for damages for total breach," or "a voluntary affirmative act which renders the obligor unable or apparently unable to perform without such a breach." *Pavone v. Kirk*, 807 N.W.2d 828, 833 (Iowa 2011) (quoting Restatement (Second) of Contracts § 250, at 272 (A.L.I. 1981)). Both mechanisms require the alleged repudiator either to communicate

their intent to breach the agreement to the other contracted party or to place themselves in such a position that they would be unable to perform without breaching the contract.

"A repudiation is accomplished by words or acts before the time of performance evidencing an intention to refuse to perform in the future." *Pavone*, 807 N.W.2d at 833. An attempt to terminate an agreement based on an erroneous interpretation of a contract, brought in good faith, is not a repudiation. *See* 23 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 63:48, at 691 (4th ed. 2018) ("[I]t is held in a number of cases that an erroneous interpretation, asserted in good faith, will not amount to a breach."). Good faith by a party is generally presumed absent evidence to the contrary. *Red Giant Oil Co. v. Lawlor*, 528 N.W.2d 524, 534 (Iowa 1995).

The United States Supreme Court adopted this approach in *New York Life Insurance v. Viglas*, 297 U.S. 672, 676 (1936) ("[There was no repudiation] as the term is known to the law. Petitioner did not disclaim the intention or the duty to shape its conduct in accordance with the provisions of the contract. Far from repudiating those provisions, it appealed to their authority and endeavored to apply them."). While other jurisdictions are free to adopt a broader view of repudiation than this baseline view, many have refused to do so. *See, e.g., Box v. Metro. Life Ins.*, 168 So. 220, 222 (Ala. 1936); *Burcham v. Unison Bancorp, Inc.*, 77 P.3d 130, 142 (Kan. 2003); *Armstrong v. Ross*, 55 S.E. 895, 899 (W. Va. 1906) ("If this were not the law, it would be a dangerous thing to stand upon a controverted construction of a contract. Every man would act at his peril in such cases, and be subjected to the alternative of acquiescing in the interpretation adopted by his opponent, or putting to hazard his entire interest in the contract. The courts have never imposed terms so harsh, or burdens of such weight. It

would amount to a virtual denial of the right to insist upon an honest, but erroneous, interpretation.").

We have aligned ourselves with this view in our prior cases. *Smith v. Fort Madison Cmty. Sch. Dist.*, 334 N.W.2d 701, 703 (Iowa 1983). In *Smith*, we considered a contract law challenge to a teacher's termination by the school district. *Id.* There, we ruled that the school district had not repudiated by initiating termination proceedings and that "the actions of the superintendent and board in seeking termination were not a repudiation of the agreement but were rather an attempt to deal with Smith's breach of it." *Id.* Like the superintendent and board in *Smith*, MWO acted in good faith when it invoked the termination process outlined in the lease in response to the apparent breach thereof. *See also Pavone*, 807 N.W.2d at 833–34 ("Wild Rose *correctly notes* that '[t]he letter by definition would not have been a "repudiation" if Wild Rose had invoked the voluntary termination provision and purported to give 120 days notice.'" (alteration in original) (emphasis added)). The record supports that MWO never refused to honor any term of the agreement, nor did its conduct indicate any refusal to perform as required under the lease. MWO's good-faith efforts to invoke and enforce the termination clause of the lease do not constitute a repudiation because it was the very termination process that Short's agreed to when it became party to the lease.

According to Short's, even if the initiation of FED#1 does not qualify as a repudiation, MWO's decision to dismiss that very same action with prejudice retroactively converted the initial termination proceeding into a repudiation. Short's cites to the Restatement (Second) of Contracts for the proposition that "[g]*enerally*, a party acts at his peril if, insisting on what he mistakenly believes to be his rights, he refuses to perform his duty." Restatement (Second) of

Contracts § 250, cmt. *d*, at 274–75 (A.L.I. 1981) (emphasis added). Here, however, MWO did not refuse to perform its duties. While Short's insists that MWO's attempts to evict breached the covenant of quiet enjoyment, it is well established in other jurisdictions that the covenant of quiet enjoyment is not violated until after a party is placed out of possession. *See, e.g., Stockton Theatres v. Palermo*, 268 P.2d 799, 802–04 (Cal. Ct. App. 1954) (collecting cases); *Moore v. Frankenfield*, 25 Minn. 540, 541 (1879); *Schuylkill & Dauphin Improvement & R.R. v. Schmoele*, 57 Pa. 271, 273 (1868). Because MWO never interfered with its tenant's actual possession, the initiation of the FED action did not violate the covenant of quiet enjoyment. Therefore, the initiation of FED#1 was not a repudiation for the same reasons that the initial termination was not a repudiation: both actions were components of the same justified attempt to terminate the lease agreement according to the process outlined by its own terms.

Short's argues that MWO's decision to dismiss FED#1 with prejudice is an adjudication of the merits that establishes the facts necessary to show repudiation. By voluntarily dismissing FED#1 with prejudice, Short's contends that MWO conceded that it had no valid basis for pursuing the termination process in the lease and initiating the FED action, thereby retroactively transforming its attempt to terminate the agreement into a repudiation.

For the dismissal of FED#1 to transform a good-faith lease termination into a repudiation, Short's would have to establish that the action was brought without a "justifying cause." *Corbin on Contracts* § 54.1, at 117. Here, however, two evidentiary hearings were held over several months. During that time, MWO could reasonably have developed concerns about the viability or cost of continuing the litigation. Accordingly, the decision to dismiss with prejudice does

not support the conclusion that MWO initiated the termination and eviction proceedings without justifying cause.

Taken to its logical end, accepting Short's argument would mean any tenant who prevails in an FED action could claim the landlord repudiated the lease by initiating the action. That would create an absolute defense to any allegation of breach occurring during the pendency of an unrelated FED action concerning the same property. *See Conrad Bros.*, 640 N.W.2d at 241. The result would be to chill landlords' exercise of their contractual right to enforce their lease agreement and pursue FED remedies, as prescribed under Iowa Code chapter 648 (2023), for a tenant's breach.

**IV. Conclusion.**

For the reasons stated, we affirm.

**Decision of Court of Appeals and District Court Judgment Affirmed.**

Waterman, McDonald, McDermott, and May, JJ., join this opinion. Mansfield, J., filed a dissenting opinion, in which Oxley, J., joined.

#24–0763, *MidWestOne Bank v. Short's Burger & Shine*

**Mansfield, Justice (dissenting).**

**I. Introduction.**

I respectfully dissent because the court's decision is contrary to law and logic. Instead of applying Iowa's established law of contracts and judgments, the majority comes up with its own version of the law, supported mainly by its subjective views of who was acting in "good faith" and some out-of-context case snippets.

Under our established law of contracts, MidWestOne's definite and unequivocal declaration on May 24, 2022, constituted a repudiation, *unless* Short's had already materially breached the lease. The forcible entry and detainer (FED) proceeding, which the parties aggressively litigated, would have established whether Short's had previously materially breached the lease. But one hour before the hearing was going to conclude on March 9, 2023, MidWestOne played gotcha. It dismissed the FED with prejudice and then claimed that Short's would have to vacate the premises anyway in several weeks because the current term of the lease was ending. MidWestOne relied on Short's failure to deliver a written notice of renewal. In doing so, it ignored the controlling facts: the FED was pending, MidWestOne was refusing Short's rent checks, and MidWestOne's notice of termination remained in effect. And never mind that MidWestOne knew that Short's intended to renew the lease unless the FED proceeding forced it to vacate; after all, Short's had just spent a large amount of money renovating the premises.

"Good faith" is not the first expression that comes to mind to describe MidWestOne's conduct. But regardless, good faith is not relevant here. MidWestOne's dismissal with prejudice of the FED action operated as an

adjudication on the merits and forecloses MidWestOne from arguing that it didn't repudiate on May 24, 2022. That repudiation relieved Short's of its duties of performance, including the duty to deliver a renewal notice, until it was rescinded by MidWestOne on March 9, 2023.

Subjective notions of good faith cannot override what the law actually provides. MidWestOne's supposed "good faith" in issuing the notice of termination doesn't preclude that notice from amounting to a repudiation, nor does MidWestOne's supposed "good faith" decision to dismiss the FED with prejudice allow it to avoid the legal effects of a dismissal with prejudice. For these reasons, I dissent and would reverse the judgment below.

**II. The Facts Reviewed.**

Let's begin by reviewing the facts. In April 2022, Short's temporarily closed its restaurant. During that time, Short's remodeled its space. The parties vigorously disputed whether Short's had to close anyway because of the condition of the building and issues with the natural gas service.

On May 10, MidWestOne served a notice of default claiming that Short's was in breach of the lease because the restaurant had been closed for more than fifteen days. MidWestOne demanded that Short's reopen within ten days. Short's did not reopen. Short's claimed that it could not reopen.

On May 24, MidWestOne wrote Short's, alleging that Short's had defaulted on the lease and that the lease was now terminated. The letter stated,

> [Y]our tenancy is terminated, and the Landlord demands that you vacate and surrender possession of the Property to the Landlord on or before June 30, 2022. If you fail to do so, the Landlord will initiate eviction proceedings pursuant to Iowa Code § 648.

Short's didn't vacate by June 30, so on July 7, MidWestOne delivered a three-day notice to quit. The notice reiterated, "According to the Notice of

Termination of Tenancy on May [24], 2022, the Lease terminated on June 30, 2022."

On July 15, MidWestOne filed an FED action to evict Short's from the premises.

Short's attempted to pay rent for July, August, and September 2022. MidWestOne returned each of these payments with the statement, "In light of the termination of the lease . . . we are returning the check. . . . Short's has held over after termination of the lease . . . ."

The FED trial was originally scheduled for August 1. By agreement, it was rescheduled to September 29. Some evidence was taken, and then the magistrate ordered that the trial would need to be completed on November 1. By agreement of the parties, the trial was then further continued—to December 13 and later December 20. In December, some additional evidence was taken, and the parties agreed that the trial would have to be completed in January 2023. In January, the parties agreed that the trial would be completed on March 9, 2023, at 9 a.m. Meanwhile, the restaurant had reopened in August 2022 and was continuing to operate.

At 8 a.m. on March 9, 2023, just before the final day of the FED trial was to begin, MidWestOne voluntarily dismissed the FED action with prejudice. MidWestOne then turned around and notified Short's in writing that the current lease term would terminate on April 30 and that it expected Short's to vacate the premises by then.

The next day, March 10, Short's delivered a notice of exercise of the three-year renewal option in the lease. And the following business day, Short's delivered a payment of approximately $40,000 to cover all the rent that had accumulated. As noted, MidWestOne had refused the July, August, and

September 2022 rent checks, and thereafter Short's had stopped tendering checks.

A few days after that, MidWestOne responded that the deadline for renewing the lease had expired on January 30 and that the March 10 notice was "not a legally effective exercise of Short's option to renew the Lease."

### III. MidWestOne Repudiated the Lease.

The fighting issue in this case is whether MidWestOne's unequivocal declaration that the lease had terminated, followed by an unsuccessful lawsuit to enforce that termination that it dismissed with prejudice, amounted to a repudiation that relieved Short's of its obligation to timely exercise the renewal option. I think it clearly did.

A letter terminating a contract is a repudiation unless the termination was justified. *Pavone v. Kirke*, 807 N.W.2d 828 (Iowa 2011), is directly on point. In *Pavone*, one party sent a notice to the other party terminating their agreement effective May 11, 2005. *Id.* at 830–31. We agreed that this was a repudiation as a matter of law. *Id.* at 833–34. It "definitely and unequivocally declared [the first party's] belief that the October agreement 'terminated pursuant to its terms effective May 11, 2005.' " *Id.* at 833. Same here.

The majority notes our language in *Pavone* indicating there would have been no repudiation if the first party had given 120 days' notice. *Id.* at 834. But that's because the contract allowed termination without cause on 120 days' notice. *Id.* at 833–34. Exercising a no-cause termination right isn't a repudiation of a contract. *Id.* That's not what MidWestOne did here. It terminated the contract for cause based on an alleged breach.[2]

---

[2]*Smith v. Fort Madison Community School District*, 334 N.W.2d 701 (Iowa 1983), is also distinguishable. In that case a school superintendent and a teacher entered into an agreement that the teacher would go on sick leave and could return for a probationary period if he furnished

*Berryhill v. Hatt*, 428 N.W.2d 647 (Iowa 1988), is to the same effect. There, Hatt agreed to sell real estate to Berryhill. *Id.* at 649. A dispute between the parties arose, and Hatt served a notice of forfeiture of the contract on Berryhill. *Id.* at 650–51, 655. We concluded, "By serving upon plaintiffs the notice of forfeiture, Hatt repudiated the contract." *Id.* at 655; *see also Shelby Cnty. Cookers, L.L.C. v. Util. Consultants Int'l, Inc.*, 857 N.W.2d 186, 188–89, 195 (Iowa 2014) (remanding for a determination whether a letter stating that the contract was terminated "constituted a repudiation").

The majority argues that the present case was simply one of MidWestOne asserting an erroneous interpretation, which by itself does not amount to repudiation. *See* 23 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 63:48, at 691–93 (4th ed. 2018). But MidWestOne did more than assert an erroneous interpretation. It declared the lease terminated before the end of the lease term and demanded that Short's vacate the premises. It refused to continue to make the premises available—that is, it refused to perform its most important duty under the contract. Unless MidWestOne was legally entitled to force out Short's, its May 24, 2022 letter amounted to a repudiation.

Indeed, the same section of Samuel Williston's *A Treatise on the Law of Contracts* cited by the majority also quotes the Restatement (Second) of

---

a certificate from a psychiatrist. *Id.* at 702. When the teacher failed to provide a certificate, and breached his agreement in other respects, the superintendent commenced legal proceedings to terminate the teacher in accordance with Iowa Code chapter 279. *Id.* at 702–03. It was ultimately determined that statutory "just cause" to terminate the teacher did not exist under chapter 279 and the termination was reversed. *Smith v. Bd. of Educ. of Fort Madison Cmty. Sch. Dist.*, 293 N.W.2d 221, 224–25 (Iowa 1980). But that didn't mean the district had repudiated the contract. *Smith*, 334 N.W.2d at 703. The teacher *had breached the contract. Id.* It was simply a question of statutory "just cause" not having been established.

This case doesn't involve separate contractual and statutory rights. The issues being litigated in the FED proceeding—which MidWestOne dismissed with prejudice—were entirely contractual, i.e., whether MidWestOne was entitled to terminate the lease.

Contracts section 250, comment *d* as follows: "Generally, a party acts at his peril if, insisting on what he mistakenly believes to be his rights, he refuses to perform his duty." *Id.* (quoting Restatement (Second) of Contracts § 250 cmt. *d*, at 274–75 (A.L.I. 1981) [hereinafter Restatement (Second)]). "Iowa law is consistent with section 250 of the Restatement." *Pavone*, 807 N.W.2d at 833; *see also Shelby Cnty. Cookers, L.L.C.*, 857 N.W.2d at 195 (citing Restatement (Second) § 250, at 272).

*Conrad Bros. v. John Deere Insurance*, 640 N.W.2d 231 (Iowa 2001), underscores this point. In that case, an insurance company wrongfully denied coverage for a loss. *Id.* at 235. We held that this denial amounted to a repudiation, observing that "[g]enerally, a good faith dispute by a party will not prevent a statement from becoming a repudiation." *Id.* at 241–42. We cited with approval comment *d* to section 250 of the Restatement (Second) quoted above. *Id.* We summarized as follows:

> In this case, John Deere denied any coverage on the claim by Conrad Bros. This denial of coverage, even though based upon a mistaken interpretation, was a clear intent not to perform. Thus, John Deere repudiated the contract.

*Id.* at 242.

Of course, MidWestOne's letter terminating the lease would not have been a repudiation *if* Short's had already materially breached. In that case, there would be a "justifying cause" for termination. *See* 10 John E. Murray, Jr., *Corbin on Contracts: Breach of Contract* § 54.1, at 117 (Joseph M. Perillo ed., rev. ed. 2014); *see also Keeter Trading Co. v. United States*, 79 Fed. Cl. 243, 253 (2007) ("[A] contractor's refusal to perform in the presence of a material breach of contract by the government does not constitute a repudiation."); *Magnet Res., Inc. v. Summit MRI, Inc.*, 723 A.2d 976, 984–85 (N.J. Super. Ct. App. Div. 1998)

(finding a party's repudiation to be the first material breach where there had been no prior material breach by the other party); *Maverick Benefit Advisors, LLC v. Bostrom*, 382 P.3d 753, 758 (Wyo. 2016) ("[W]hen one party to a contract materially breaches the contract, the non-breaching party has two options: it may continue the contract—retain its economic benefits and sue for damages, or it may repudiate the agreement—suspend performance under the contract and sue for damages.").

As the Restatement (Second) explains, "[I]t is a condition of each party's remaining duties to render performance to be exchanged under an exchange of promises that there be no uncured material failure by the other party to render any such performance due at an earlier time." Restatement (Second) § 237, at 215. We relied on this principle in *Dolly Investments, LLC v. MMG Sioux City, LLC*, 984 N.W.2d 168, 170, 177 (Iowa 2023), a case in which we concluded that the tenant committed the first uncured material breach and thus discharged the landlord's duty to perform.

But MidWestOne is precluded from arguing that it had just cause for terminating the lease in May 2022 because it *dismissed with prejudice* the action in which it sought to prove that just cause. MidWestOne filed its FED action to enforce its termination letter alleging default based on Short's restaurant having been closed for more than fifteen consecutive days. MidWestOne *lost* that case: it dismissed it with prejudice.

A dismissal with prejudice is a final adjudication on the merits. *See, e.g.*, *Shontz v. Mercy Med. Ctr.-Clinton, Inc.*, 33 N.W.3d 598, 604–05 (Iowa 2026). In *ACC Holdings, LLC v. Rooney*, 973 N.W.2d 851, 854–55 (Iowa 2022), we specifically held that the dismissal with prejudice of an FED action had preclusive effect and barred a plaintiff from bringing a subsequent FED over the

same allegedly breaching conduct. So, the point remains: MidWestOne cannot claim that Short's had materially breached before MidWestOne sent its May 2022 notice of termination because MidWestOne lost that litigation—through a mid-trial voluntary dismissal with prejudice.

**IV. MidWestOne's Repudiation of the Lease Excused Short's Obligation to Give Timely Notice That It Was Exercising the Renewal.**

The general rule is that anticipatory breach "excuses performance on the part of the non-breaching party." *Horsfield Constr., Inc. v. Dubuque County*, 653 N.W.2d 563, 573 (Iowa 2002). Section 253 of the Restatement (Second) provides that "one party's repudiation of a duty to render performance discharges the other party's remaining duties to render performance." Restatement (Second) § 253, at 286. This applies to giving notice of the exercise of a renewal option under a lease. *See Kern v. Prudential Ins. Co. of Am.*, 293 F.2d 251, 258 (8th Cir. 1961) (holding that timely exercise of a conversion option in an insurance policy was required given that the defendant had not repudiated the contract); *Lakeshore Ctr. Holdings, LLC v. LHC Loan, LLC*, 2018 WL 3045133, at *7 (Ill. App. Ct. Mar. 12, 2018) (accepting that repudiation of a repurchase option "would excuse any failure to exercise the repurchase option" but finding no repudiation); *Apollo W., LLC v. Sacks*, No. 53425–4–I, 2004 WL 2211731, at *2 (Wash. Ct. App. Oct. 4, 2004) (per curiam) ("If the court's ruling was based on the view that West failed to timely exercise its right of renewal under the lease, then it must first be determined whether, as West claims, it was relieved from that requirement by the Sacks' anticipatory breach of the lease by wrongly declaring West in default. . . . Anticipatory breach relieves the other party of the duty to perform.").

For example, in *Gilmore v. Duderstadt*, 961 P.2d 175, 181 (N.M. Ct. App. 1998), the Court of Appeals of New Mexico ruled that if the

landlords had repudiated the lease, this would excuse the tenant's failure to timely exercise a purchase option under the contract. As the court put it,

> Defendants ignore the firmly rooted principle of contract law that, in the case of a bilateral contract for an exchange of performances, one party's repudiation of its duty to perform discharges the other party's remaining duties of performance under the contract. Thus, the fact that the notice was untimely would be excused by any factual finding by the jury that the Duderstadts repudiated the contract by increasing the rent during the trial period. Thus, we hold that the trial court erred in ruling, as a matter of law, that Gilmore's failure to submit timely written notice of his intent to exercise the option was not excused by the Duderstadts' prior act of increasing the rent during the trial period.

*Id.* (citations omitted).[3]

I recognize that we ordinarily require strict compliance with a time deadline for exercising a renewal option in a lease. *See Pitz v. U.S. Cellular Operating Co. of Dubuque,* 989 N.W.2d 636, 640 (Iowa 2023); *SDG Macerich Props., L.P. v. Stanek Inc.,* 648 N.W.2d 581, 586–87 (Iowa 2002). But here, MidWestOne's repudiation excused Short's performance—including the requirement to give notice of renewal—until MidWestOne retracted that repudiation on March 9, 2023, by dismissing the FED with prejudice and treating the lease as remaining in effect. *See* Restatement (Second) § 257 cmt. *a,*

---

[3]I have found one contrary case that holds, with minimal analysis, that repudiation does not excuse a party from giving notice of exercising a renewal option. *See Aetna Inc. v. Express Scripts, Inc.,* No. 07–5541, 2009 WL 10685122, at *6–7 (E.D. Pa. Oct. 20, 2009). But again, the prevailing rule is to the contrary. Here is an illustration from the Restatement (Second):

> A, an insurance company, issues a policy insuring B against theft, and providing that no payment will be made unless written notice is given within 60 days after loss. A loss occurs, and B immediately notifies A by telephone. A repudiates by informing B without adequate reason that it will not pay the loss. Because of this, B does not give written notice to A. B has a claim against A for the amount of the loss.

Restatement (Second) § 255 cmt. *a,* illus. 1, at 292; *see also id.* cmt. *a,* at 291 ("No one should be required to do a useless act, and if, because of a party's repudiation, it appears that the occurrence of a condition of a duty would not be followed by performance of the duty, the non-occurrence of the condition is generally excused.").

at 296 ("[A] repudiation operates until nullified . . . as a ground for discharge . . . ."); *see also* Iowa Code § 554.2610(3) (2023) (allowing suspension of performance when repudiation occurs in a contract for the sale of goods).

## V. There Is Nothing Unfair About This Outcome.

An underlying theme of the court's opinion is that it's unfair for MidWestOne to be bound to the renewal term of the lease. I'm sorry, I don't see it. MidWestOne had alternatives available to it.

First, MidWestOne could have litigated the FED proceeding to conclusion. If it prevailed, then obviously the lease would be over and done with. In fact, the FED proceeding *would have concluded* on March 9, 2023—the same day that MidWestOne elected instead to dismiss it with prejudice.

Second, MidWestOne could have filed a declaratory judgment action in May 2022 seeking a determination that Short's had materially breached and the lease could be terminated. That would not have been a repudiation even if MidWestOne lost. *See Conrad Bros.*, 640 N.W.2d at 242 (discussing use of a declaratory judgment); Restatement (Second) § 250 cmt. *d*, at 275 (same).

Third, if MidWestOne believed it had some other ground for terminating the lease in March 2023 (I'm not aware of any), it could have filed yet another FED. If successful, that would also end the lease.

MidWestOne did none of these things.

For all the reasons stated, I would hold that Short's properly exercised the renewal option after MidWestOne had retracted its repudiation and that the renewal term of the lease went into effect.

Oxley, J., joins this dissent.